EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Watchtower Bible and Tract Society of New York, Inc., et al.<br><br>        Recurridos<br><br>            v.<br><br>Municipio de Dorado, et al.; United States District Court for the District of Puerto Rico<br><br>        Peticionarios | 2014 TSPR 138<br><br>192 DPR ____ |

Número del Caso: CT-2013-14

Fecha: 18 de noviembre de 2014

Parte Peticionaria:

>    Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico

Abogado de la Parte Demandante:

>    Lcda. Nora Vargas Acosta

Abogada de la Parte Demandada, Municipio Dorado:

>    Lcdo. Héctor Rivera Cruz
>    Lcdo. Iván Pasarell Jové

*Amicus Curiae*:

>    **DBR Dorado Owner, LLC Coco Beach Maintenance, Inc.; Serrallés Hotal**
>    Lcdo. Arturo García Solá
>
>    **Departamento de Justicia**
>    Lcda. Margarita Mercado Echegaray
>    Procuradora General
>
>    Lcda. Amarilys Ramos Rodríguez
>    Procuradora General Auxiliar

Materia: Código Civil de Puerto Rico, Art. 256 – existencia de calles privadas bajo el ordenamiento jurídico de Puerto Rico

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Watchtower Bible and Tract
Society of New York, Inc., et
al.

   Recurridos

v.

Municipio de Dorado, et al.;
United States District Court for
the District of Puerto Rico

   Peticionarios

Certificación

CT-2013-0014

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a  de 18 de noviembre de 2014.

El presente recurso de certificación interjurisdiccional solicitado por el Tribunal Federal de Distrito para el Distrito de Puerto Rico (Tribunal de Distrito) nos permite contestar la interrogante siguiente: ¿Permiten las leyes de Puerto Rico que existan calles residenciales privadas? Luego de examinar la norma civilista concerniente a la clasificación de los bienes y la legislación aplicable, contestamos afirmativamente. Resolvemos que el

ordenamiento jurídico vigente provee para la existencia de calles residenciales públicas y calles residenciales privadas. Las de carácter público están contempladas en el Art. 256 del Código Civil, que -según se explicará más adelante- establece que son bienes de uso público en Puerto Rico aquellos costeados por los mismos pueblos o con fondos del tesoro de Puerto Rico que estén destinados al uso público. Serán calles privadas aquellas que queden fuera de esa categoría. Circunstancia que, según explicaremos, está supeditada al ejercicio del legislador para determinar lo que constituye un fin público.

A continuación exponemos el tracto procesal y fáctico que originó el presente recurso y los fundamentos que sostienen nuestra determinación.

I

En el 2004, Watchtower Bible Tract Society of New York y la Congregación Cristiana de los Testigos de Jehová de Puerto Rico Inc., presentaron una demanda en el Tribunal de Distrito contra el Gobierno de Puerto Rico y varios municipios y urbanizaciones. En esta sostuvieron que la Ley de Control de Acceso, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 LPRA sec. 64, et seq., (Ley de Control de Acceso) era inconstitucional de su faz y en su aplicación porque presuntamente violaba sus derechos a la libertad de expresión y la libertad de culto.[1] La

---

[1] Véanse: *Plaintiffs' complaint for declaratory judgment and permanent injunctive relief* y *Plaintiffs' amended complaint for declaratory*

contención de los demandantes era que dicha ley les impedía entrar a ciertas urbanizaciones aun cuando las calles de estas eran públicas.

Luego de varios trámites procesales, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito sostuvo que la Ley de Control de Acceso era constitucional de su faz, pero no en su aplicación. De acuerdo al foro apelativo federal, la manera en que la ley se había implementado en algunas instancias infringía el derecho de los demandantes a ejercer sus libertades constitucionales. Watchtower Bible and Track Society of New York v. Sagardía, et al., 634 F. 3d 3 (1er Cir. 2011). En vista de ello, devolvió el caso al Tribunal de Distrito para trámites posteriores.

Una vez devuelto el caso, en febrero de 2012 el Tribunal de Distrito ordenó a los municipios demandados que presentaran alternativas para permitir que los demandantes pudieran entrar a las urbanizaciones con control de acceso, independientemente de que operaran con o sin guardias de seguridad.[2] Como parte de esos procedimientos, el Municipio de Dorado argumentó que la referida orden no le aplicaba a la urbanización Brighton Country Club (BCC), localizada en su jurisdicción. Como

---

judgment and permanent injunctive relief. Apéndice del alegato del Municipio de Dorado, págs. 1 y 38.

[2] Véase, Orden de 2 de febrero de 2012 emitida por el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico, Apéndice del Alegato del Municipio de Dorado, pág. 102. Durante ese proceso, se desestimó la demanda contra el Estado dado a que la implementación de esa ley y el remedio concedido le correspondía a los Municipios.

fundamento, planteó que sus calles eran privadas porque fueron costeadas con fondos privados y porque no se habían transferido a la autoridad municipal. Así, indicó que era la Asociación de Residentes de BCC quien tenía la titularidad de dichas calles.

Eventualmente, el Municipio de Dorado presentó ciertos documentos que, a su juicio, establecían que las calles de BCC eran privadas.[3] Entre ellos, el endoso del Municipio de Dorado para la construcción del proyecto –condicionado a que las calles se mantuvieran privadas— y la escritura sobre condiciones restrictivas en la que se detalló que el mantenimiento de las calles estaba a cargo de la Asociación de Residentes.

Ante esa disyuntiva, el 19 de junio de 2013 el Tribunal de Distrito nos certificó la pregunta siguiente: *Do the laws and Constitution of Puerto Rico allow for private roads?*[4] El 17 de julio de 2013 acogimos la solicitud para estudiar únicamente si las leyes de Puerto Rico permiten la existencia de calles residenciales privadas. Así las cosas, en octubre de ese mismo año, las entidades DBR Dorado Owners LLC, Coco Beach Maintenance, Inc. y Serrallés Hotel, Inc. solicitaron comparecer

---

[3] Véase, *Motion in compliance with order,* Íd., pág. 119.

[4] Inicialmente, el Tribunal de Distrito había certificado una pregunta en cuanto a si la Ley de Control de Acceso, permitía las urbanizaciones de control de acceso sin guardias de seguridad, y de permitirse, si ello era constitucional bajo la Constitución de Puerto Rico. Esta solicitud de certificación fue denegada por no cumplir con los estándares de la Regla 25 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

conjuntamente como amigos de la corte, a lo que accedimos.[5] En esos mismos términos, invitamos al Departamento de Justicia para que compareciera.[6] Finalmente, conforme a las Reglas 4 y 41 del Reglamento del Tribunal Supremo de Puerto Rico, 4 LPRA Ap. XXI-B, celebramos una vista oral el 11 de febrero de este año, en la que tuvimos la oportunidad de escuchar las posturas de las partes y de los amigos de la corte.[7]

Contando con el beneficio de la comparecencia de las partes, de los escritos de los amigos de la corte y de los argumentos presentados en la vista oral, pasamos a contestar la pregunta ante nuestra consideración.

## II

### A. El recurso de certificación interjurisdiccional

Nuestro ordenamiento procesal civil contempla dos tipos de recursos de certificación: el intrajurisdiccional y el interjurisdiccional. Como sabemos, la certificación interjurisdiccional es la que le facilita a un tribunal someter a otro tribunal de una jurisdicción distinta, preguntas sobre cuestiones dudosas que se refieren al derecho de esa jurisdicción. Véanse: Martínez Marrero v.

---

[5] Véase Resolución del Tribunal Supremo de Puerto Rico de 14 de noviembre de 2013.

[6] Más adelante, la *American Civil Liberties Union* también solicitó comparecer como amigo de la corte. No obstante, denegamos su petición, ya que su comparecencia estaría dirigida a ilustrar a este Tribunal en temas relacionados a derecho constitucional, los cuales quedaban fuera del alcance de la pregunta certificada. Véase, Resolución del Tribunal Supremo de Puerto Rico de 16 de diciembre de 2013.

[7] Véase Resolución del Tribunal Supremo de Puerto Rico de 22 de noviembre de 2013.

González Droz, 180 DPR 579, 584-585 (2011); Santana v. Gobernadora, 165 DPR 28, 42 (2005); Guzmán v. Calderón, 164 DPR 220, 227 (2005); Pan Ame. Comp. Corp. v. Data Gen. Corp., 112 DPR 780, 783 (1982). Esto, pues cuando el derecho estatal no es claro, el foro federal generalmente se abstiene de decidir asuntos relacionados a ese derecho que puedan ser determinantes en un pleito ante sí. Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, págs. 784-785. La facultad de este Tribunal para entender en asuntos que le son certificados es discrecional. Guzmán v. Calderón, supra, pág. 228. Empero, de hacerlo, las determinaciones que hagamos obligan en cualquier procedimiento judicial ulterior entre las partes, bajo la doctrina de cosa juzgada. Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, pág. 784.

Este tipo de recurso establece una colaboración útil entre la jurisdicción federal y la estatal. Véanse, Santana v. Gobernadora, supra, pág. 43; Medina & Medina v. Country Pride Foods, 122 DPR 172, 181 (1988). De igual manera, ayuda a preservar y respetar la función de las cortes estatales de interpretar y formular el derecho de los estados. Muñiz-Olivari v. Stiefel Labs, 174 DPR 813, 818 (2008); Santana v. Gobernadora, supra, pág. 42; Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, pág. 785. Así, se reconoce la primacía de las normas de derecho civil para la resolución de conflictos de derecho privado. Martínez Marrero v. González Droz, supra, pág. 585.

El recurso de certificación interjurisdiccional está estatuido en el inciso (f) del Art. 3.002 de la Ley de la Judicatura de 2003, que establece que el Tribunal Supremo de Puerto Rico

> [m]ediante auto de certificación, podrá conocer de cualquier asunto que le fuere certificado por el Tribunal Supremo de Estados Unidos de América, un tribunal de apelaciones de circuito de los Estados Unidos de América, un Tribunal de distrito de los Estados Unidos de América, el más alto tribunal apelativo de cualesquiera de los estados de Estados Unidos de América, así como por los tribunales de menor jerarquía de cualesquiera de los estados de los Estados Unidos de América, cuando así lo solicite cualesquiera de dichos tribunales, de existir ante el tribunal solicitante cualquier asunto judicial en el que estén implicados cuestiones de Derecho puertorriqueño que puedan determinar el resultado del mismo y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este tribunal. Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003 (4 LPRA sec. 24s).

A su vez, la Regla 25(a) del Reglamento del Tribunal Supremo de Puerto Rico nos ilustra sobre esta materia. En lo pertinente, reza que

> [e]ste tribunal podrá atender cualquier asunto que le sea certificado por el Tribunal Supremo de Estados Unidos de América, por un Tribunal de Apelaciones de Circuito de Estados Unidos de América, por un tribunal de Distrito de Estados Unidos de América o por el más alto tribunal apelativo de cualquiera de los estados de la Unión americana, cuando así lo solicite cualquiera de dichos tribunales, de existir ante el tribunal solicitante cualquier asunto judicial en el cual estén implicados cuestiones de derecho puertorriqueño que puedan determinar el resultado del asunto y respecto al cual, según la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este tribunal. Regla 25 del Reglamento del Tribunal Supremo de Puerto Rico (4 LPRA Ap. XXI-B).

Similar lenguaje contiene la Regla 52.2(d) de Procedimiento Civil de 2009 (32 LPRA Ap. V).[8]

Es apropiado señalar que las preguntas certificadas deben enmarcarse en un contexto de hechos detallados y específicos. Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, pág. 786. Sin embargo, los términos específicos utilizados por el foro federal no limitan nuestra facultad para exponer la controversia conforme a nuestro mejor entendimiento del récord, ni restringe el ámbito de nuestra función interpretativa. Córdova & Simonpietri v. Crown American, 112 DPR 797, 799 (1982).

En este caso, contestaremos si el ordenamiento jurídico puertorriqueño permite que existan calles residenciales privadas. Recalcamos que no es nuestra función pasar juicio sobre las controversias constitucionales[9] planteadas por las partes, propias del pleito que se ventila ante el foro federal. De igual forma, tampoco nos compete emitir un dictamen que se

---

[8] Esta expresa que:

> [e]l recurso de certificación se formalizará cuando el Tribunal Supremo de Estados Unidos de América, un Tribunal de Circuito de Apelaciones de Estados Unidos de América, un Tribunal de Distrito de Estados Unidos de América, el más alto tribunal apelativo de cualquiera de los estados y territorios de los Estados Unidos de América o de cualquier otro tribunal de menor jerarquía apelativa, tenga ante su consideración un caso en el cual surja cualquier asunto judicial en el que estén implicados cuestiones de derecho puertorriqueño que puedan determinar el resultado del mismo y respecto al cual, en la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este tribunal.

[9] Por ejemplo, en su escrito, *Watchtower* argumenta sobre el balance que debe hacerse entre el derecho a la libertad de expresión y el derecho de propiedad.

extienda más allá de nuestras facultades como foro judicial, trastocando los límites de las funciones que son propias de la Asamblea Legislativa de Puerto Rico. Aclarado esto, pasemos a examinar la norma jurídica pertinente.

B. **Análisis del marco doctrinal**

Aunque este Tribunal no se ha expresado en cuanto a la controversia de si pueden existir calles residenciales de naturaleza privada, en el contexto de este caso, la realidad es que no se trata de un asunto novedoso. Por el contrario, se trata de una pregunta que la doctrina ha considerado y para la cual se han formulado respuestas encontradas. Por un lado, hay quienes consideran que no existe impedimento legal alguno para que una calle urbana o residencial sea de naturaleza privativa. Por otra parte, hay quienes estiman que ello es inconcebible.

Por ejemplo, según el tratadista español Martín Blanco, la posibilidad de las llamadas "calles particulares" se fundamenta en la interpretación literal, lógica, sistemática y de praxis administrativa del Art. 344 del Código Civil español, análogo al Art. 256 de nuestro Código Civil. Martín Blanco, Las urbanizaciones privadas y su posible configuración jurídica, Madrid, Ministerio de la Vivienda, Servicio Central de Publicaciones, 1973, pág. 75. Sin embargo, Mola concibe que es inadmisible que la calle, como concepto eminentemente público, sea de particulares, y califica la

idea como "aberrante". Véase M.A. del Arco Torres, Diccionario de Derecho Civil, Granada, Editorial Comares, 1999, pág. 181.[10] Por otra parte, la profesora García Cárdenas opina que aun

> [e]n las urbanizaciones que están constituidas bajo la égida de la ley de condominios, tampoco existen calles privadas. En estas el área de rodaje es parte de los elementos comunes. O sea, lo que parece una calle no es *per se* una calle, sino que es la equivalencia al pasillo que en una construcción vertical conecta al apartamento a la vía pública. M. E. García Cárdenas, Derecho de urbanizaciones: servidumbre en equidad, controles de acceso e instalaciones vecinales, San Juan, Ed. Interjuris, 2010, págs. 82-83.

Como vemos, existen distintas opiniones en cuanto al concepto de la calle residencial privada. En el pasado este Tribunal se ha expresado sobre otras controversias relacionadas a las calles. Sin embargo, como veremos más adelante, en esas ocasiones la titularidad de estas no estaba en disputa. En el presente caso podremos justipreciar este asunto desde una perspectiva distinta. Esto, pues la interrogante que nos ocupa surge ante la alegación de que las calles de una urbanización no son públicas porque fueron costeadas y mantenidas con fondos privados y porque nunca se cedieron a favor del municipio.[11] En ese contexto, lo que hoy nos corresponde

---

[10] Para opinar así se apoya en las disposiciones de la Ley de Suelo de España que exigían que el propietario de suelo urbano cediera las calles al Ayuntamiento en la proporción establecida.

[11] Es meritorio aclarar que los acuerdos a los que haya llegado el Municipio de Dorado con los promotores o desarrolladores de la urbanización BCC no son pertinentes para resolver el recurso particular que está ante nosotros. Eso está fuera del alcance de nuestra función adjudicadora pues nos circunscribiremos a determinar

resolver es si nuestro ordenamiento permite que existan calles privadas.

Con el fin de adjudicar esta controversia, es ineludible que repasemos en primera instancia cómo el Código Civil de Puerto Rico clasifica los bienes por razón de su pertenencia. Luego, discutiremos con énfasis especial el régimen jurídico que aplica a la categoría de *bienes de dominio público*, que es en la que el Código incluye a las *calles* y a los *caminos vecinales*. Esto es importante ya que, como veremos, un bien de esa naturaleza (público) no puede ser propiedad de una persona particular. En ese ejercicio, analizaremos el Código Civil de Puerto Rico en unión a la norma jurisprudencial y a la doctrina que nos ayuda a interpretarlo, así como otras leyes pertinentes a esta materia.

### i. La clasificación de los bienes

El ordenamiento jurídico civil define el concepto "bienes" como cualquier cosa que pueda constituir riqueza y fortuna y los clasifica de acuerdo con sus características físicas. Art. 252 del Código Civil, 31 LPRA sec. 1021. Al respecto, se distingue, por ejemplo, entre: bienes muebles e inmuebles, bienes fungibles y no fungibles, y bienes corporales e incorporales. 31 LPRA secs. 1027, 1029, 1066. Así también, el Código divide los bienes de acuerdo a las personas a quienes pertenecen. En

---

si nuestro ordenamiento permite que esa clase de bienes existan dentro de la modalidad privativa.

ese sentido, nuestra jurisdicción adoptó una norma tripartita según la cual los bienes pueden ser comunes, de dominio público o privados. San Gerónimo Caribe Project v. E.L.A. I, 174 DPR 518, 557 (2008); Art. 253 del Código Civil de Puerto Rico, 31 LPRA sec. 1022.[12] De acuerdo a Vázquez Bote, esta clasificación implica un criterio que se basa en la adscripción al sujeto. E. Vázquez Bote, Derecho privado puertorriqueño, Orford, Ed. Equity, 1991, T. VII, pág. 30.

Los bienes comunes se describen en el Art. 254 del Código Civil como aquellos cuya propiedad no pertenece a nadie en particular y que todos pueden usar libremente de acuerdo a la propia naturaleza del bien, por ejemplo: el aire, las aguas pluviales, el mar y sus riberas. 31 LPRA sec. 1023. Por otro lado, son bienes de propiedad privada, además de los patrimoniales del Estado, los que pertenecen a los particulares individual o colectivamente. Art. 257 del Código Civil, 31 LPRA sec. 1026. Por razón de esa distinción, los bienes se clasifican entre pertenecientes a los particulares o a los entes públicos, y a su vez, estos últimos pueden ser bienes de dominio público (demaniales) o bienes de dominio privado (patrimoniales). Vázquez Bote, op. cit., pág. 29. Véase también, E.L.A. v. Tribunal Superior, 97 DPR 644, 669 (1969).

---

[12] El Art. 253 del Código Civil de Puerto Rico, 31 LPRA sec. 1022, establece que "[l]as cosas o los bienes son, o comunes o públicos. Los bienes además son susceptibles de ser, o propiedad de las corporaciones o propiedad de los individuos".

Los Arts. 255 y 256 del Código Civil, 31 LPRA secs. 1024 y 1025, son los que enumeran los bienes de dominio público. Esta lista se complementa con las disposiciones del Art. 274 del mismo cuerpo legal, que también habremos de examinar más adelante. 31 LPRA sec. 1082. Por el momento, es importante mencionar que contrario a lo que ocurre con los bienes particulares, -que se rigen por las normas ordinarias de derecho civil privado y que quedan sujetos al régimen regular de propiedad[13]- los de dominio público gozan de una tutela diferente al ser inembargables, imprescriptibles e inalienables. Figueroa v. Municipio de San Juan, 98 DPR 534, 562-563 (1970). Véanse además: J.L. Lacruz Berdejo, Elementos de derecho civil, 3ra ed. rev., Madrid, Ed. Dykinson, 2005, T. I, Vol. III, pág. 39. Vázquez Bote, op. cit., pág. 29. Estos bienes están fuera del comercio porque por disposición de ley no se pueden enajenar ni poseer privadamente. San Gerónimo Caribe Project v. E.L.A. I, supra, págs. 558, 561. Ese tratamiento jurídico diferente se debe a las características y a las funciones que han cumplido dichos bienes desde antaño en las sociedades. J.V. González García y otros, Derechos de los bienes públicos, Valencia, Ed. Tirant lo Blanch, 2005, pág. 12.

Así pues, para ponderar si en Puerto Rico las calles residenciales pueden ser bienes susceptibles de

---

[13] En cuanto a estos bienes privados, el Código establece que las personas los pueden disponer libremente sin más limitaciones que las impuestas por la ley. Art. 276 del Código Civil de Puerto Rico, 31 LPRA sec. 1084.

apropiación particular, debemos discutir el tratamiento jurídico concerniente a los bienes de dominio público. Esto, pues como veremos más adelante, el Código Civil alude a los términos *calles* y *caminos vecinales* en los artículos que definen y enumeran este tipo de bienes. Nos corresponde entonces evaluar si aún ante esa clasificación general cabe la posibilidad de que en nuestro ordenamiento puedan surgir a la vida jurídica calles residenciales dentro de la modalidad privada. Pasemos a examinar los artículos del Código Civil que presentan la primera declaración jurídico legal con referencia a las cosas que se pueden reconocer como de dominio público. Véase P. Escribano Collado, <u>Las vías urbanas: concepto y régimen de uso</u>, Madrid, Ed. Montecorvo, 1973, pág. 102.

### ii.  <u>**Bienes de dominio público**</u>

Hay ciertos bienes que los poderes públicos excluyen del tráfico jurídico porque son imprescindibles para el desarrollo de la sociedad. González García y otros, <u>op. cit.</u>, pág. 72. Cónsono con ello, el Art. 255, de nuestro Código Civil, <u>supra</u>, que procede del Art. 339(1) del Código Civil español,[14] indica que "son bienes de dominio

---

[14] El Art. 339 del Código Civil español establece que:
   Son bienes de dominio público:
   1. Los destinados al uso público, como los caminos, canales, ríos, torrentes, puertos y puentes construidos por el Estado, las riberas, radas y otros análogos.
   2. Los que pertenecen privativamente al Estado, sin ser de uso común, y están destinados a algún servicio público o al fomento de la riqueza nacional, como las murallas, fortalezas y demás obras de defensa del territorio, y las minas, mientras que no se otorgue su concesión.

Según podemos apreciar, nuestro Art. 255 es similar al primer inciso del Art. 339 español, con la excepción de que el primero no hace

público, los destinados al uso público, como los caminos, canales, ríos, torrentes y otros análogos". (Énfasis nuestro). 31 LPRA sec. 1024. Por su parte, nuestro Art. 256 supra, cuyo homólogo es el Art. 344 también del Código Civil español,[15] señala que

> [s]on bienes de uso público en Puerto Rico y en sus pueblos, **los caminos estaduales y los vecinales**, las plazas, **calles**, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.
>
> Todos los demás bienes que el Estado Libre Asociado de Puerto Rico o los municipios posean, son patrimoniales y se regirán por las disposiciones de este título. (Énfasis nuestro). 31 LPRA sec. 1025.

Los preceptos españoles de los que preceden estos Arts. 255 y 256 distinguen entre los bienes que son del dominio público de la nación española de los que pertenecen a las corporaciones locales y provinciales.[16]

---

referencia a los puertos y puentes construidos por el Estado y sustituye los conceptos de riberas y radas. Además, el Art. 255, supra, omite la segunda parte del Art. 339, supra, que contempla que también sean de dominio público los bienes que le pertenecen privativamente al Estado. Esto, pues conforme al ordenamiento establecido en Puerto Rico desde 1902 por el Código Civil, estos bienes dejaron de considerarse como de dominio nacional y público, y se reconocieron como patrimoniales del Estado. Véase, San Gerónimo Caribe Project v. E.L.A. I, 174 DPR 518, 566 (2008).

[15] El estatuto español indica que:

> Son bienes de uso público en las provincias y en los pueblos, los caminos provinciales y los vecinales, las playas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o provincias.
>
> Todos los demás bienes que unos y otras posean, son patrimoniales y se regirán por las disposiciones de este Código, salvo lo dispuesto en leyes especiales.

[16] Véanse: González García y otros, op. cit., pág. 931; Lacruz Berdejo, op. cit., págs. 33-34; Gil de la Cuesta, op. cit., págs. 61-62; L. Díez-Picazo y Ponce de León, Sistema de Derecho Civil, 6ta ed.,

Ahora bien, es importante tener presente que el hecho de que el Código puertorriqueño haya permanecido con estos dos preceptos no implica que en nuestra jurisdicción existan dos categorías distintas de bienes de dominio público. El profesor Michel Godreau lo explica de la siguiente manera:

> El artículo 255 del Código Civil de Puerto Rico expresa que los bienes destinados al uso público son de dominio público, y el artículo 256 ejemplifica este tipo de bien al enumerar dentro de esa categoría general a los caminos estatales y vecinales, las plazas, calles, los paseos y las obras públicas de servicio general, "costeados por los mismos pueblos o con fondos del tesoro de Puerto Rico".

> Podría parecer que el artículo 256 crea una categoría adicional al hablar de bienes de uso público, ofreciendo una lista constituida en su totalidad de bienes construidos o creados con fondos públicos, a diferencia de los enumerados en el anterior artículo 255 que incluye cosas naturales. Esta diferenciación no está justificada y de hecho no tiene consecuencia alguna en términos de las restricciones a la enajenabilidad y transferibilidad a los particulares. Tanto los incluidos bajo el artículo 255 como los enumerados bajo el 256 son bienes de dominio público, es decir, no son bienes patrimoniales. No hay diferencia entre los bienes de dominio público y los de uso público. Tanto a unos como a otros les aplican las mismas restricciones y todos tienen las mismas características de inalienabilidad e imprescriptibilidad. M. Godreau y J. A. Giusti, <u>Las Concesiones de la Corona y Propiedad de Tierra en Puerto Rico, Siglos XVI-XX: un estudio jurídico</u>, 62 Rev. Jur. U.P.R. 351, 562 (1993).

---

Madrid, Ed.Tecnos, 1997, V.1, pág. 393; J.M. Manresa y Navarro, <u>Código Civil Español</u>, Madrid, Ed. Reus S.A., T.3, 1976, págs. 93, 99, 101; A.M. Borell y Soler, <u>Derecho Civil Español</u>, Barcelona, Ed. Bosh, T.1., 1955, págs. 293, 298.

Esta lista de bienes de dominio público que establece el Código es ejemplificativa.[17] Por lo tanto, existen otros bienes que se les puede considerar como bienes de dominio público aunque no estén específicamente enumerados en el Código. Así sucede con el Art. 274, supra, que dispone lo siguiente:

> Entre las cosas que no son susceptibles de apropiación están comprendidas aquellas que no pueden ser propiedad particular por razón de su objeto, tales como las cosas en común o sean aquéllas cuyo uso y disfrute pertenece a todos los hombres.
>
> Hay otras cosas, por el contrario, que aunque por su naturaleza son susceptibles de propiedad particular, pierden esta cualidad como consecuencia de la aplicación que de ellas se hace para fines públicos incompatibles con la propiedad privada, si bien pueden adquirir su primitiva condición tan pronto cese el fin público que se les hubiera dado; **tales son los terrenos de las carreteras, calles y plazas públicas**. 31 LPRA sec. 1082.

Nótese que esta disposición no trata de bienes que en su origen se califican como bienes de dominio público, sino que tal condición queda supeditada al uso al que eventualmente destinen. Es decir, el Art. 274, supra, no crea una categoría de bienes de dominio público como a manera de ejemplo lo hacen los Arts. 255 y 256, supra, sino que alude a que ciertos terrenos podrían quedar destinados a uso público si se construyera en ellos un bien de dominio público, como por ejemplo, una calle

---

[17] Véanse: J. Lacruz Berdejo y otros, Elementos de derecho civil, 3ra ed., Madrid, Ed. Dykinson, 2005, Vol. 3, pág. 34; Albaladejo y otros, Comentarios al Código Civil, Madrid, Ed. Edersa, Madrid, 1990, T.1, Vol.1, pág. 90; A.M. Borrell y Soler, Derecho Civil Español, Barcelona, Ed. Bosh, 1955, T. I, pág. 293; I. I. Gil de la Cuesta, Barcelona, Ed. Bosh, T.3, 2000, op. cit. pág. 62.

pública. Si esto ocurre, dichos terrenos quedarían excluidos del régimen de propiedad privada por razón del bien público que radicaría sobre ellos. Véanse, e.g.: Figueroa v. Municipio de San Juan, supra; Balzac v. Registrador, supra. Sobre este Artículo, Vélez Torres nos explica que equivale a la norma anglosajona que establece que los bienes susceptibles de apropiación individual pierden esa característica por 'incompatibilidad de uso'. J.R. Vélez Torres, Curso de Derecho Civil, Madrid, Ed. Offigraf, 2005, T.II, 2005, pág. 41.

De manera que, conforme a lo que hemos discutido hasta este momento, son bienes de dominio público: los destinados al uso público, los de uso público que se mencionan en el Art. 256, supra, y los terrenos que se han destinado para fines de uso público. Cabe destacar que en todo caso, lo que define a estos bienes es **el uso público al que se destinan.**

Nos aclara Vélez Torres que no es necesario que los bienes de dominio público sean propiedad del Estado o de sus dependencias. Vélez Torres, op. cit., págs. 40-41. En ese sentido, lo que caracteriza a estos bienes no es la propiedad o pertenencia en sí. De igual manera, el hecho de que un bien sea de dominio público tampoco depende de su naturaleza geológica o física. San Gerónimo Caribe Project v. E.L.A. I, supra, págs. 565-566, citando a Godreau y Giusti, supra, pág. 563. En ambos casos, lo determinante es la **finalidad** del bien, es decir, la

afectación de este al uso público general.[18] Íd. Por lo tanto, un bien afectado o destinado a un fin o interés público adquirirá la clasificación jurídica de bien de dominio público. San Gerónimo Caribe Project v. E.L.A. I, supra, pág. 564. Esto, independientemente de a quién pertenezca y de su naturaleza. Véase además, Figueroa v. Municipio, supra. Según señalamos en San Gerónimo Caribe Project v. E.L.A. I:

> […] la clasificación demanial puede responder exclusivamente a la propia naturaleza de la cosa, sin que se requiera ningún acto ulterior del soberano, como sería el caso de los ríos y los torrentes, pues su afectación está definida de modo general en la ley con relación a determinadas circunstancias físicas o naturales. 31 LPRA sec. 1024. En otros casos, la afectación responde al acto singular del soberano para construir o establecer un inmueble para fines públicos, como por ejemplo, las carreteras estatales o cementerios municipales. San Gerónimo Caribe Project v. E.L.A. I, supra, pág. 565.

En ese mismo caso discutimos las maneras mediante las cuales un bien puede quedar afectado al uso público. Indicamos que esto puede deducirse de una declaración del legislador, como sería el Código Civil o la Ley de Puertos. Id. Así también, puede ocurrir mediante actos administrativos[19] realizados por el Estado bajo la autorización de alguna ley (como por ejemplo, la

---

[18] Esto, independientemente de la actividad material y contingente de la construcción de la cosa. Véase, Díez-Picazo, op. cit., pág. 393. Véanse también: M. Manresa y Navarro, op. cit., págs. 93, 96-97; Vélez Torres, op. cit., págs. 40-41.

[19] La doctrina española distingue entre la "afectación administrativa expresa" y la "afectación administrativa implícita". González García y otros, op. cit., págs. 90-91. En ese sentido, contempla que hay afectación implícita en supuestos tales como la aprobación de planes de ordenación urbana. Id., pág. 982. Véase además, Lacruz Berdejo, op. cit., pág. 37.

construcción de una plaza o de un cementerio). Id. Por lo que podríamos decir que luego de que el legislador advierte una necesidad social, fija los objetivos que constituyen la razón para someter al demanio cierta categoría de bienes. González García y otros, op. cit., pág. 72. Elaboremos un poco sobre este asunto particular.

Según la doctrina, la afectación por acto legislativo es el único procedimiento para que entren en el dominio público categorías enteras de bienes como los descritos en el Art. 339.1 del Código Civil español, análogo al Art. 255 nuestro. González García y otros, op. cit., pág. 89. La autora Isabel Miralles González explica este tipo de afectación de la siguiente forma:

> La consideración de dominio público de un bien arranca de una declaración legal. El destino público de esos bienes se hace para todos aquellos que participen de la misma denominación, llámesele naturaleza[20] o no, es decir, para todos aquellos bienes reconocibles por sus características intrínsecas, razón por la cual no precisan de un acto específico de afectación. **Basta con que la Ley [...] declare el carácter de bienes de dominio público a los de un tipo determinado,** para que todos los que participan de esa misma naturaleza vengan a integrarse en dicho dominio. (Énfasis y escolio nuestro).
>
> I. Miralles González, Dominio público y propiedad privada en la nueva ley de costas, Barcelona, Ed. Cívitas S.A., 1992, pág. 69.

---

[20] Dice esto al analizar el texto del segundo inciso del Art. 122 del Anteproyecto de la Constitución española, que leía como sigue: "En todo caso son bienes de dominio público por su naturaleza la zona marítimo- terrestre, las playas, el mar territorial, la plataforma continental y sus recursos naturales". Según explica la autora, la frase "por su naturaleza", fue suprimida. Véase, I. Miralles González, Dominio público y propiedad privada en la nueva ley de costas, Barcelona, Ed. Cívitas S.A., 1992, págs. 28-30.

En Puerto Rico, el Art. 256 del Código Civil es el precepto que define el carácter demanial de las calles. Nuestro ordenamiento jurídico no cuenta con una ley especial que regule específicamente este tipo de bienes.[21] De lo contrario, el Código Civil aplicaría supletoriamente en cuanto a la materia que hoy nos concierne. Véase, Art.

---

[21] El comentarista Garrido Falla, al discutir la enumeración que contiene el Art. 344 del Código Civil español, análogo al Art. 256 nuestro, nos indica que:

> …si nos limitamos a la lectura del [artículo] 344 del Código civil, las calles parece que sean bienes de uso público, por su naturaleza; pero a la misma conclusión tendríamos que llegar entonces en relación a los caminos. Y sin embargo, hay que admitir que existen caminos (y carreteras) privados: aquellos que *en todo su recorrido* discurren por terrenos de propiedad privada. Los carteles de "camino particular" con los que frecuentemente nos topamos en nuestras excursiones no van, obviamente, contra la Ley.
>
> Ahora bien, ¿existen calles privadas? Convencionalmente, podríamos definir la calle como un camino que permite el acceso a las distintas zonas y edificaciones de una ciudad. Si se admite esta acepción, es obvio que la calle debe ser de uso público (y, por tanto, de dominio público…). (Itálicas en el original, citas omitidas). Albaladejo y otros, op. cit., pág. 131.

Tras expresar esto, alude a la legislación urbanística de esa jurisdicción y concluye lo siguiente:

> [l]a conclusión que se desprende de los preceptos examinados parece ser la de que, aunque la obra sea sufragada por los promotores privados, la calle construida ha de ser cedida al Ayuntamiento y, por tanto, entra en su patrimonio (público). Lo que ocurre es que la recepción de obras por el Ayuntamiento… no siempre se realiza. […] **Si no ha habido, pues, recepción de las obras por parte del Ayuntamiento, estamos aquí en presencia de las polémicas 'calles privadas'.** (Énfasis nuestro). Íd., pág. 132.

Como vemos, el tratadista recurre a los pronunciamientos del legislador sobre la regulación urbanística para completar su análisis. Y es que debe ser de esta manera, pues es claro que el régimen jurídico de la mayoría de los bienes que se reseñan en el Código Civil no deriva del "escueto precepto legal citado, sino de legislaciones específicas". Albaladejo y otros, op. cit., pág. 90. Esto, ya que como bien señala la doctrina, la regulación de cada parcela concreta de dominio público no va a ser fruto únicamente de la ley general reguladora de la categoría de bienes, sino que se trata de un entramado de piezas. González García y otros, op. cit., pág. 74-75. Así, cada bien enumerado como de dominio público debe contener sus características y regímenes jurídicos propios. Íd., pág. 926.

12 del Código Civil de Puerto Rico, 31 LPRA sec. 12. Véanse además, San Gerónimo v. E.L.A. I, supra; Córdova & Simonpietri v. Crown American, 112 DPR 797 (1982). Conviene pues que estudiemos la controversia que nos ocupa enmarcada en la interpretación que la norma jurisprudencial y la doctrina han dado a este precepto del Código Civil.

### iii. Las calles y el Art. 256 del Código Civil

En el pasado, hemos interpretado el referido artículo en controversias relativas a la Ley de Control de Acceso, supra. Véanse, e.g., Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 DPR 1 (1997); Caquías v. Asoc. Res. Mansiones Río Piedras, 134 DPR 181 (1993). Específicamente, hemos dilucidado si las restricciones de acceso que permitía esa legislación tuvieron el efecto de convertir las calles públicas en vías de acceso privado.

Así por ejemplo, en Caquías v. Asoc. Res. Mansiones Río Piedras, supra, el Municipio de San Juan autorizó el cierre de unas vías municipales que daban acceso a la urbanización Mansiones de Río Piedras. Allí aludimos al Art. 256 del Código Civil, supra, y señalamos que en nuestro ordenamiento las calles son bienes de uso público. Íd., pág. 187. Por otra parte, en Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, supra, atendimos unos reclamos constitucionales relacionados al Art. VI, Sec. 9 de nuestra Constitución, que obliga al Estado a *utilizar las*

*propiedades y los fondos públicos únicamente para fines*

*públicos.* Indicamos que

> **[e]n este contexto** las calles son bienes de
> dominio y uso públicos independientemente de la
> jurisdicción bajo la cual se encuentren, sea
> ésta municipal o estatal. Este carácter público
> de las calles se desprende de nuestro Código
> Civil, Arts. 255 y 256 […]. (Énfasis nuestro,
> citas omitidas). Asoc. Ctrl. Acc. C. Maracaibo
> v. Cardona, supra, pág. 29.

Vemos que estos casos —contrario al que hoy nos

ocupa— se resolvieron en el contexto de urbanizaciones

cuyas calles eran municipales y estaban costeadas con

fondos públicos. Desde luego que ante ello, el concepto

"control de acceso" preservaba la naturaleza pública de

las calles.[22] Caquias v. Asoc. Res. Mansiones Río Piedras,

supra, pág. 186.   Ahora bien,   nótese que lo antes

reseñado demuestra que siempre hemos interpretado el Art.

256 del Código sugiriendo que las calles que allí se

mencionan son costeadas con fondos públicos. Así también

lo expresó el entonces Juez Asociado Señor Negrón García

en su opinión concurrente y disidente en Asoc. Ctrl. Acc.

C. Maracaibo v. Cardona, supra. En la misma, mencionó que

el Art. 256 del Código Civil, supra, "describe las calles

como bienes de uso público en Puerto Rico y en sus

pueblos, costeadas por los mismos pueblos o con fondos del

Tesoro de Puerto Rico", Asoc. Ctrl. Acc. C. Maracaibo v.

---

[22] Ante ello, reiteramos que la Ley de Control de Acceso no tuvo el
efecto de privatizar esas calles públicas ya que eso no surge de esa
legislación. Nótese que la Ley de Control de Acceso permitió a los
municipios conceder permisos para el control del tráfico de vehículos
de motor y del uso público de las **vías públicas**. 23 LPRA sec. 64. Por
lo tanto, no existe controversia en cuanto a que las calles públicas
costeadas por el Estado son de dominio público y que la Ley de Control
de Acceso no alteró ni altera esa situación jurídica.

Cardona, (Negrón García, J., Op. Concurrente y Disidente),

supra, pág. 66. También añadió lo siguiente:

> La Asamblea Legislativa tiene la potestad de enmendar el Código Civil y otras leyes para traspasar las calles residenciales a bienes de uso privado. Claro está, una vez dejen de ser bienes de uso público, su mantenimiento no podrá ser con fondos públicos municipales o estatales. Conllevaría el que con el traspaso de las calles se traspase el costo de mantenimiento de éstas, incluyendo el alumbrado, las reparaciones y la responsabilidad civil sobre éstos. El efecto sería que las calles se convirtieran en bienes de uso común limitado de las urbanizaciones con todas las responsabilidades, obligaciones y problemas que esto conlleva. (Citas omitidas). Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, (Negrón García, J., Op. Concurrente y Disidente), supra, pág. 66.

Pasemos entonces a describir como la doctrina ha

interpretado este Artículo.

Según acotamos, el profesor Godreau señala que el Art.

256, supra, contiene una lista

> **[…] constituida en su totalidad de bienes construidos o creados con fondos públicos**, a diferencia de los enumerados en el [Art. 255] que incluye cosas naturales. Godreau y Giusti, supra, pág. 562. (Énfasis nuestro).

Si bien el propósito del autor en su comentario es

distinguir entre bienes propios de la naturaleza de otros

que no lo son, hacemos énfasis en que alude a que esos

bienes que se mencionan en el Art. 256, supra, son bienes

construidos o creados con fondos públicos. En ese mismo

sentido, al interpretar el Art. 344 del Código Civil

español, que es análogo al Art. 256 nuestro, Borrell

señala que:

> Entre los [bienes] destinados por las provincias y pueblos al uso público, el art. 344 menciona

'los caminos provinciales y vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o provincias' […]

De modo que las fincas destinadas a oficinas, hospitales, escuelas, museos, etc., etc., de las provincias y de los municipios, o bien son bienes privados de dichas corporaciones, o bien están fuera del Código civil, **y aun los bienes de uso público que enumera *han de ser* costeados por los mismos pueblos o provincias** porque añade este requisito injustificado. (Bastardillas en el original, énfasis suplido). Borrell y Soler, op. cit., págs. 298-299.

Independientemente de que lo considera un "requisito injustificado" -asunto que no está en discusión en este caso- el tratadista interpreta que los bienes que se enumeran en esa disposición son costeados por el ente público. Por otro lado, Garrido Falla nos dice que el Art. 344 del Código Civil español contiene un lenguaje esencialmente idéntico al del Reglamento de Bienes de España de 1986, que establecía en su Art. 3.1 que:

[…] son bienes de uso público local los caminos, plazas, calles, paseos, parques, aguas de fuentes y estanques, puentes y demás obras públicas de aprovechamiento o utilización generales cuya conservación y policía sean de la competencia de la entidad local. F. Garrido Falla en M. Albaladejo y otros, Comentarios al Código Civil, Madrid, Ed. Edersa, 1990, T. V, Vol. I, pág. 130.

Mencionamos el comentario del tratadista ya que al hacerlo, señala que la expresión "y demás obras públicas" no deja de ser un acierto del legislador, porque **"aclara que aquellos paseos, caminos o parques que no sean ellos mismos "obras públicas", no forman parte del dominio ni**

**del demanio de las entidades locales"**. (Énfasis nuestro). Íd.

Así también, el tratadista español Escribano Collado, al analizar el concepto de las vías públicas urbanas como bienes de dominio público nos menciona que la demanialidad sólo es posible para "aquellas vías urbanas a las que se denominan públicas: aquellas que siendo de titularidad administrativa (municipal) han sufrido un proceso de afectación al uso público". Escribano Collado, op. cit., págs. 115-116. En otras palabras, vías que están bajo el control de alguna autoridad gubernamental.

Luego de analizar la norma jurisprudencial y la doctrina que precede, vemos que si bien el Art. 256, del Código Civil de Puerto Rico, supra, indica que las calles y los caminos vecinales son de dominio público, una interpretación lógica de ese precepto nos lleva a concluir que ello se menciona en el contexto de que estos sean mantenidos o costeados por el Estado. Como ya mencionamos, el Art. 256 de Código Civil, supra, establece que son bienes de uso público "los caminos y … [las] calles …costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico". De manera que, podemos decir que en Puerto Rico todas las calles residenciales que participan de este "tipo determinado" establecido por ley son de dominio público y por ende, no pueden ser patrimonio privado. Por lo tanto, resolvemos que las calles residenciales que queden fuera de lo establecido en el

Art. 256 no se considerarán como tales, conforme a la interpretación de este artículo.

IV

En resumen, actualmente el ordenamiento jurídico concibe que las calles residenciales puedan ser de titularidad pública o de titularidad privada. Según se deduce del lenguaje del Art. 256 del Código Civil, supra, y de la doctrina que lo interpreta, las calles que forman parte de la categoría de bienes de dominio público son las costeadas y mantenidas por los mismos pueblos y que están destinadas al uso público. El andamiaje jurídico vigente no requiere que todas las vías residenciales se traspasen a título de los municipios con fin de destinarlas al uso público.[23] Al ser así, las calles que no se transfieran a un ente gubernamental quedarán fuera del régimen del Art. 256 del Código Civil, supra, no por el hecho de sobre quien recaiga su titularidad, sino porque no pertenece al tipo determinado de calles que allí se enumera. Claro está, sabemos que la Asamblea Legislativa de Puerto Rico tiene amplia facultad para determinar lo que constituye un fin público. Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, supra, pág. 28; P.I.P. v. C.E.E., 120 DPR 580, 608-609 (1988). Así también, hemos reiterado que la actividad urbanística está sujeta a las regulaciones que tenga a bien imponer el Estado ya que el derecho a urbanizar no es

---

[23] Véase por ejemplo, la reglamentación adoptada al amparo de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009.

absoluto y puede condicionarse. Véanse: <u>Arenas Procesadas v. E.L.A.</u>, 132 DPR 593 (1993); <u>Vázquez v. A.R.Pe.</u> 128 DPR 513 (1991); <u>The Richards Group v. Junta de Planificación</u>, 108 DPR 23 (1978).

Por consiguiente, luego de analizar la legislación especial aplicable y los preceptos de nuestro Código Civil en unión a la norma jurisprudencial y doctrina que los interpretan, resolvemos que el ordenamiento jurídico puertorriqueño vigente contempla la existencia de calles residenciales privadas, según los fundamentos expuestos en esta opinión.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Watchtower Bible and Tract
Society of New York, Inc., et
al.

        Recurridos


          v.


Municipio de Dorado, et al.;

United States District Court for
the District of Puerto Rico

        Peticionarios

Certificación


CT-2013-0014


SENTENCIA

San Juan, Puerto Rico, a 18 de noviembre de 2014.

Por los fundamentos expuestos en la Opinión que antecede, contestamos la pregunta certificada en la afirmativa. Resolvemos que el ordenamiento jurídico puertorriqueño vigente contempla la existencia de calles residenciales privadas, según los fundamentos expuestos en esta opinión.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y los Jueces Asociados señores Martínez Torres y Estrella Martínez disienten con opinión escrita. La Jueza Asociada señora Oronoz Rodríguez está inhibida.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Watchtower Bible and Tract Society of New York, Inc., *et al.*<br><br>Recurridos<br><br>v.<br><br>Municipio de Dorado, *et al.;* United States District Court for the District of Puerto Rico<br><br>Peticionarios | CT-2013-0014 | Certificación |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 18 de noviembre de 2014.

> "De repente se detuvo; una interrogación enteramente inesperada y extraordinariamente sencilla hubo de herirle la mente, dejándolo estupefacto."[24]

Disiento enérgicamente de la opinión que hoy emite una mayoría de este Tribunal por entender que, mediante ésta, se utiliza el mecanismo de certificación interjurisdiccional para emitir una opinión consultiva que evidencia palmariamente el desatino en el que incurrió este Tribunal al expedir el recurso de certificación en primer lugar.

El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico acude ante este Tribunal mediante el mecanismo de certificación y nos formula la siguiente pregunta: "¿Existen calles privadas en Puerto Rico?". Esto es, el foro federal nos solicita que

---

[24] Fiódor M. Dostoievski, *Crimen y castigo* 141 (Rafael Cansinos Assens, trad.)(2006).

examinemos si las leyes vigentes y la Constitución de Puerto Rico permiten la existencia de calles residenciales privadas. Por entender que la pregunta adolece de una vaguedad que imposibilita circunscribirla a la controversia planteada ante el foro federal, estimo que el análisis de la Opinión Mayoritaria es superfluo e inconsecuente para el pleito que allí se dilucida. Asimismo, considero que la pregunta formulada no cumple con el requisito insoslayable que exige nuestro ordenamiento procesal civil; a saber, que la interrogante sea de tal naturaleza que determine el resultado del pleito en el foro desde el cual se certifica.

De otra parte, me resulta imposible coincidir en los méritos con el análisis que hace una mayoría de este Tribunal para revocar un precedente de gran arraigo en nuestra jurisprudencia. Acoger la lectura errada del Código Civil que esgrime la mayoría conlleva prescindir de una evaluación concienzuda de los efectos de la decisión que emite, al poner en manos de los desarrolladores el futuro de la planificación urbana en nuestro País.[25]

Examinemos concisamente los hechos del caso, según éstos surgen de la solicitud de certificación del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico y los documentos que la acompañan.

I

---

[25] A esos efectos, coincidiría con el análisis en los méritos esbozado por el Juez Asociado Estrella Martínez en su Opinión Disidente.

El 18 de mayo de 2004, Watchtower Bible Tract Society of New York y la Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc. (Watchtower o los demandantes) presentaron una demanda en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico en contra del Estado Libre Asociado de Puerto Rico, varios municipios, sus oficiales municipales y algunas urbanizaciones del País. En esencia, los demandantes solicitaron una sentencia declaratoria en relación a la constitucionalidad de la Ley de Control de Acceso, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64, *et seq*. Alegaron que el sistema de control de acceso obstaculizaba el ejercicio de sus derechos de libertad de expresión y libertad de culto, por lo que la Ley era inconstitucional, de su faz y en su aplicación.

Luego de que el Tribunal de Distrito decretara la constitucionalidad de la Ley, la Corte de Apelaciones de los Estados Unidos para el Primer Circuito determinó que, si bien la Ley de Control de Acceso no era inconstitucional de su faz, sí lo era en su aplicación. A esos efectos, devolvió el caso al Tribunal de Distrito para que se le ordenara a los municipios y a sus oficiales a garantizar acceso a los Testigos de Jehová a las calles públicas en urbanizaciones cerradas y a idear planes de acción para que éstos pudiesen acceder aquellas urbanizaciones que no contaban con guardias de seguridad y exigían el uso de un código automatizado para lograr acceso. Consecuentemente, el Tribunal de Distrito, mediante el recurso de certificación interjurisdiccional,

pidió a este Foro que examinara la constitucionalidad de las urbanizaciones con acceso controlado automatizado. En aquel momento, acertadamente denegamos la certificación por entender que la Ley de Control de Acceso expresamente contemplaba la implementación de mecanismos de control de acceso automatizados. Concluimos, además, que la respuesta a la pregunta que se nos certificaba no sería un factor determinante en el resultado del pleito. Esto, tomando en consideración el dictamen de la Corte de Apelaciones de los Estados Unidos para el Primer Circuito y sus pronunciamientos en torno a la constitucionalidad del control de acceso automatizado.

Posteriormente, el Tribunal de Distrito requirió que los municipios presentaran planes de acción para garantizar el acceso de los demandantes a las urbanizaciones que operaban con control de acceso automatizado. El Municipio de Dorado, sin embargo, alegó que una de las urbanizaciones dentro de su demarcación territorial estaba exenta de garantizar el acceso a los demandantes pues sus calles no eran propiedad del Estado, sino de la Asociación de Residentes, por lo que estaban completamente cerradas al acceso del público. La urbanización en cuestión, Brighton Country Club (BCC), es un conjunto de residencias que opera con un sistema de control de acceso automatizado.

Concebida originalmente como propiedad privada, la parcela de BCC fue segregada y desarrollada en lotes residenciales. Asimismo, se construyeron calles que conectaban los distintos lotes con las áreas de uso común entre los residentes y que garantizaban el acceso de

éstos a las vías públicas. El Municipio de Dorado aprobó el proyecto de urbanización bajo la condición de que las calles de la urbanización se mantuvieran como propiedad privada y la asociación de residentes se encargara de su mantenimiento.[26] Durante la etapa de construcción, BCC solicitó un permiso para construir un portón a la entrada de la comunidad residencial conforme a las disposiciones de la Ley de Control de Acceso. El permiso fue concedido por el Municipio y, luego de la segregación de las calles

---

[26] Específicamente, el Municipio de Dorado endosó el proyecto el 23 de julio de 2007. En aquel momento, el artículo 9.10 del Reglamento de Lotificación y Urbanización, Reglamento Núm. 6992 de 30 de junio de 2005, disponía que las nuevas vías o vías existentes que requiriesen ser prolongadas, ampliadas o realineadas debían ser dedicadas al uso público para garantizar acceso a las vías públicas. Además, disponía que dichas áreas serían transferidas al municipio o agencia estatal a la que correspondiese su administración y mantenimiento. Por su parte, el artículo 3.05 expresamente preceptuaba que no se expedirían permisos para la lotificación de solares sin que éstos tuviesen una vía pública que sirviese de entrada y salida al solar urbanizado. El artículo 7.02 del mismo Reglamento, en lo referente a las urbanizaciones residenciales, disponía que todo nuevo solar a ser formado para estos propósitos debía tener acceso a través de una calle pública debidamente inscrita. Asimismo, y como abordaremos más adelante, la Ley Hipotecaria exige el traspaso de las calles segregadas a nombre del Municipio para su inscripción. Nos resulta problemático, por tanto, que la mayoría aluda "al andamiaje jurídico vigente" para afirmar que éste "no requiere que todas las vías residenciales se traspasen a título de los municipios con fin de destinarlas a uso público". *Opinión Mayoritaria*, en la pág. 27. Más problemático resulta el hecho de que, justo después se afirma que, el hecho de no transferir esas calles a la autoridad municipal tendrá el efecto de que éstas "quedarán fuera del régimen del artículo 256 del Código Civil". *Id.* No obstante, el fundamento principal de su determinación parece ser que solo aquellas obras costeadas con fondos públicos están dentro del alcance del artículo 256. Conforme a estas expresiones, no parece descabellado colegir que, el requisito de financiamiento público no es lo determinante, sino la decisión de un desarrollador y un Municipio de incumplir con las leyes y reglamentos aplicables, transfiriendo las calles a nombre de la Asociación de Residentes.

y las áreas comunes, los desarrolladores transfirieron la titularidad de éstas a la Asociación de Residentes. La escritura de segregación identifica cuatro vías dentro de la urbanización, las cuales se describen como propiedad privada. Por tal razón, el Municipio de Dorado arguye que BCC está exenta de cumplir con las órdenes del foro federal que exigen garantizar acceso a los demandantes a las urbanizaciones con control automatizado. Alega que las órdenes del foro federal se limitan a urbanizaciones en donde las calles sean de carácter público y no privado.

Es en este contexto fáctico que el foro federal acude ante nos mediante el vehículo de certificación interjurisdiccional, el cual fue expedido por una mayoría de este Tribunal mediante Resolución del 17 de julio de 2013.

## II

La certificación interjurisdiccional es un instrumento procesal mediante el cual un tribunal federal somete al foro de mayor jerarquía de un estado o del Estado Libre Asociado de Puerto Rico una o varias preguntas que conciernen asuntos regulados por el derecho estatal. Su propósito primordial es garantizar que los foros estatales sean los intérpretes definitivos de asuntos que conciernen el derecho estatal y para los cuales no hay un precedente claro que permita al foro federal adjudicar la controversia ante sí. De esta manera, se evita que los foros federales especulen respecto a cómo un tribunal estatal resolvería cuestiones

novedosas que surgen al amparo del derecho estatal. Además, la certificación interjurisdiccional atiende consideraciones relacionadas a la economía procesal, la indeseabilidad de la bifurcación de pleitos, la prudencia judicial y la deferencia, el respeto y la cortesía en un sistema en el que coexisten dos poderes judiciales soberanos.[27]

En esencia, la certificación interjurisdiccional intenta mitigar la tensión que genera la imposibilidad de que, en pleitos presentados a nivel federal, las cortes estatales puedan decidir concluyentemente controversias al amparo del derecho estatal. Véase Jonathan Remy Nash, *Examining the Power of Federal Courts to Certify*

---

[27] Ante todo, el mecanismo de certificación interjurisdiccional supone un intento de equilibrar el poder judicial de las cortes estatales con aquel de las cortes federales. Además, este mecanismo de carácter excepcional responde a nociones de deferencia entre sistemas judiciales soberanos, las cuales son indispensables para el pleno y eficiente funcionamiento del sistema federal norteamericano. De ordinario, un foro federal podrá resolver controversias que surjan al palio del derecho estatal sin que sus dictámenes estén sujetos a la revisión judicial por parte del más alto foro del estado del que se trate. De otra parte, los dictámenes de los foros estatales que versen sobre derecho federal sí están sujetos a la revisión judicial por parte del Tribunal Supremo de los Estados Unidos. En consideración de lo anterior, es plausible colegir que el mecanismo procesal de certificación interjurisdiccional busca promover cierta simetría en el ejercicio del poder judicial por parte de los estados y el gobierno federal. Esto es, este mecanismo le provee a los foros estatales de mayor jerarquía la oportunidad de que sean ellos, y no los foros federales, quienes diluciden controversias novedosas o pauten normas de derecho al amparo del derecho estatal. Sin embargo, para que dicha oportunidad sea aprovechada adecuadamente, y tomando en consideración el carácter vinculante de su determinación para los foros estatales, es indispensable que la pregunta que certifique el foro federal esté lo suficientemente delimitada, con tal de evitar la posibilidad de que el foro federal le imponga indebidamente al foro estatal adoptar una norma inoportunamente y abstraída de una controversia real.

*Questions of State Law*, 88 Cornell L. Rev. 1672 (2003). De esta manera, no se menoscaba la función prístina de las cortes estatales y del Estado Libre Asociado de Puerto Rico de interpretar y formular el derecho de su propia jurisdicción. *Pan Ame. Corp. V. Data Gen. Corp*, 112 D.P.R. 780, 785 (1982). Igualmente, mediante el mecanismo de certificación interjurisdiccional, los foros federales evitan adentrarse a evaluar planteamientos constitucionales inoportunamente cuando la interpretación del derecho estatal puede disponer de la controversia. Véase Brian Mattis, *Certification of Questions of State Law: An Impractical Tool in the Hands of the Federal Courts*, 23 U. Miami L. Rev. 717, 728 (1969).

En nuestro ordenamiento jurídico, se reconoce la certificación interjurisdiccional como un vehículo procesal adecuado para que un foro federal pueda someter ante la consideración de este Tribunal, para una contestación definitiva, preguntas que atiendan aspectos ambiguos o novedosos del derecho puertorriqueño cuya resolución podría determinar el resultado de un pleito ante su consideración. *Santana v. Gobernadora,* 165 D.P.R. 28, 42 (2005). Este mecanismo está expresamente regulado por la Regla 25 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A, y el Art. 3002f de la Ley de la Judicatura de 2003, Ley Núm. 21 de 22 de Agosto de 2003 ("Ley de la Judicatura de 2003"), 4 L.P.R.A. sec. 24s(f).

Al interpretar estas disposiciones, este Tribunal ha manifestado en repetidas ocasiones que, para que proceda una certificación interjurisdiccional, es imperativo que la solicitud por parte del foro federal cumpla con los

siguientes requisitos: (1) las preguntas certificadas deben involucrar cuestiones de derecho puertorriqueño; (2) dichas cuestiones puedan determinar o determinen el resultado del caso; (3) no existan precedentes claros en la jurisprudencia del Tribunal Supremo de Puerto Rico, y (4) se haga una relación de todos los hechos relevantes a dichas interrogantes que demuestre claramente la naturaleza de la controversia de la cual surgen las preguntas. *Pan Ame. Corp.*, 112 D.P.R. en la pág. 788.

Así, vemos que nuestro ordenamiento exige, no solo que la pregunta sea dispositiva o pueda tener un efecto determinante en el caso presentado ante el foro federal, sino que además esté circunscrita a una situación de hechos que impida una contestación indebidamente abarcadora y que, a su vez, tenga un efecto vinculante en nuestra jurisdicción. Este requisito responde al hecho de que las contestaciones a las preguntas que nos son certificadas "obligan en cualquier procedimiento judicial ulterior entre ambas jurisdicciones, bajo la doctrina de cosa juzgada". *Guzmán v. Calderón*, 164 D.P.R. 220, 227 (2005). A esos efectos, reiteradamente hemos afirmado que las certificaciones interjurisdiccionales no pueden engendrar contestaciones en abstracto al separar las cuestiones certificadas de los hechos del caso pues esto puede inducir al Tribunal a emitir opiniones consultivas. *Pan Ame. Corp.*, 112 D.P.R. en la pág. 785. Véase, además *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).

Por tanto, es forzoso concluir que, en atención a la discreción que ostentamos como el más alto foro en nuestra jurisdicción, al momento de expedir un recurso de

certificación interjurisdiccional debemos evaluar que la pregunta que se nos certifica cumpla cabalmente con los requisitos que guían el ejercicio de nuestra función judicial en este ámbito. En el ejercicio de esta discreción, este Tribunal no puede eludir el principio fundamental en el que se asienta el sentido y el propósito de la función judicial de resolver controversias concretas, reales y efectivas entre litigantes que reclamen intereses o derechos adversos ante un tribunal y para los cuales el dictamen tenga consecuencias concretas. Véase *Pan Ame. Corp.*, 112 D.P.R. en las págs. 785-786. Véase, además J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo IV 1540 (2da ed. 2011).

## III

Examinada la naturaleza del mecanismo de certificación interjurisdiccional en nuestro ordenamiento, así como los criterios reglamentarios y jurisprudenciales que deben guiar nuestra discreción, resulta evidente que su expedición en el caso que nos ocupa representa un desacierto más de una mayoría de este Tribunal al momento de atender recursos de carácter excepcional. Veamos.

## A

Como discutimos, la controversia puntual planteada ante el foro federal requiere evaluar si, para efectos del ejercicio de los derechos constitucionales consagrados en la Primera Enmienda, una urbanización residencial que alega que sus calles son privadas, está

exenta de permitir que los demandantes accedan las mismas. En aras de resolver esta controversia, el foro federal entiende que es preciso determinar si nuestro ordenamiento jurídico contempla la existencia de calles privadas. Específicamente, el Tribunal de Distrito sostiene que "la disposición de este asunto resolverá todos los procedimientos ulteriores que penden ante [esa] corte". Véase *Opinión, Orden y Certificación al Tribunal Supremo de Puerto Rico*, en la pág. 1. Por entender que esta conclusión puede inducir a error y acarrea una inferencia en relación a cuál sería la respuesta de este Foro a la pregunta certificada, discrepamos de la apreciación que hace el foro federal de la controversia ante sí, así como de la disposición de este Tribunal de contestar la pregunta que le fue certificada.

Indudablemente, una respuesta en la negativa a la pregunta certificada efectivamente dispondría de la controversia planteada ante el foro federal. Curiosamente, y según se desprende de la discusión contenida en el acápite III de la *Opinión, Orden y Certificación al Tribunal Supremo de Puerto Rico*, el foro federal parece entender que existen precedentes claros y contundentes en nuestra jurisdicción que inequívocamente reafirman la naturaleza pública de las calles en Puerto Rico.[28] Igualmente reconoce que, según este Tribunal ha interpretado las disposiciones contenidas en el artículo 256 del Código Civil, las calles en Puerto Rico deben estar abiertas al uso público. Por otro lado, la Opinión

---

[28] Otro tanto reconoce la mayoría al afirmar que "la realidad es que no se trata de un asunto novedoso". *Opinión Mayoritaria*, en la pág. 9.

Mayoritaria no escatima en afirmar que "[e]n Puerto Rico, el Art. 256 del Código Civil es el precepto que define el carácter demanial de las calles". *Opinión Mayoritaria*, en la pág. 20. Es difícil concebir, entonces, por qué el foro federal estimó que era necesario que nos expresáramos respecto a la existencia de calles privadas en nuestro País cuando de su propia discusión se desprende que categóricamente hemos establecido lo contrario.[29] Más difícil resulta comprender, la acogida entusiasta por parte de este Tribunal al recurso presentado.

La contestación que la mayoría de este Tribunal ofrece al Tribunal de Distrito durante el día de hoy, en extrema síntesis, es que las leyes de Puerto Rico permiten la existencia de calles residenciales privadas. Específicamente, mediante una lectura textualista del artículo 256 del Código Civil, Cód. Civ. P.R. Art. 256, 31 L.P.R.A. sec. 1025, la mayoría concluye que, una calle costeada con fondos privados, está fuera del alcance de esa disposición, y, por tanto, no constituye un bien de uso público. La opinión, sin embargo, no entra a considerar la naturaleza de las calles como bienes de uso

---

[29] Específicamente, el Tribunal de Distrito reconoce que: "[T]he Court has indicated on a number of occasions that the Puerto Rico Civil Code mandates that all roads maintain their public nature." *Opinion, Order, and Certification to the Puerto Rico Supreme Court*, en la pág. 4. Es inevitable, entonces, indagar respecto a las verdaderas motivaciones detrás de la certificación que hoy atendemos. Así, resulta interesante la posible equiparación que intima la Opinión entre las urbanizaciones con control de acceso electrónico y las comunidades privadas que proliferan en los Estados Unidos y que son parte del desarrollo urbano, cultural y social de esa nación. Véase *id.* pág. 5.

público ni la función de éstas en la planificación y zonificación de nuestros espacios urbanos.

Es inconcebible pensar que la respuesta que ofrece una mayoría del Tribunal, sin más, efectivamente dispone de la controversia planteada ante el foro federal o tiene un efecto sustancial en la determinación que en su día emitirá ese foro. A todas luces, el efecto trascendental de esta respuesta estriba en la adopción de un precedente sumamente peligroso en nuestra jurisdicción y una desviación manifiesta de lo que por décadas ha sido la norma en nuestro ordenamiento.[30]

En vista de lo anterior, es inevitable deducir que no estábamos ante un asunto para el cual no existieran precedentes claros en nuestra jurisdicción. Además, es preciso señalar que la formulación de la pregunta certificada y las implicaciones de tal formulación imposibilitan que sensatamente una mayoría de este Tribunal considere que la misma es, o podría ser, dispositiva de la controversia planteada ante el foro federal.

**B**

Por otro lado, y en relación al efecto de nuestro dictamen en los procedimientos que se ventilan ante el

---

[30] Para un recuento jurisprudencial en torno a la naturaleza pública de las calles en Puerto Rico, véase *Asoc. Control de Acceso Maracaibo v. Cardona*, 144 D.P.R. 1 (1997); *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993); *Pacheco Fraticcelli v. Cintrón Antosanti*, 122 D.P.R. 229 (1988); *Rupert Armstrong v. ELA*, 97 D.P.R. 588, 616-618 (1969); *Gobierno de la Capital v. Consejo Ejecutivo*, 63 D.P.R. 434, 458 (1944); *El Municipio de Vega Baja v. Smith*, 27 D.P.R. 632 (1919); *Saldaña v. Concejo Municipal de San Juan*, 15 D.P.R. 37, 51 (1909). Cabría preguntarse si estos casos quedan revocados con la decisión que hoy emite el Tribunal.

Tribunal de Distrito, la mayoría concede que no se está

pasando juicio sobre las controversias constitucionales

planteadas por las partes.[31] Ese reconocimiento implica

que la mayoría reconoce que la respuesta que ofrece no es

---

[31] Incluso, la mayoría reconoce que cuando la American Civil Liberties Union solicitó comparecer como *amicus curiae*, denegaron su petición, determinando que su comparecencia "estaría dirigida a ilustrar a este Tribunal en temas relacionados a derecho constitucional (sic), los cuales quedaban fuera del alcance de la pregunta certificada". *Opinión Mayoritaria*, en la pág. 5, n. 6. Asimismo, la mayoría reitera este planteamiento cuando expresa que: "Recalcamos que no es nuestra función pasar juicio sobre las controversias constitucionales planteadas", *Id.*, aludiendo específicamente al "balance que en su día hará el foro federal entre el derecho a la libertad de expresión y el derecho de propiedad". *Id.* pág. 9.

En cuanto a este balance, es importante destacar que el Tribunal Supremo de los Estados Unidos ha expresado que:

> "For over 50 years, the Court has invalidated restrictions on door-to-door canvassing and pamphleteering. It is more than historical accident that most of these cases involved First Amendment challenges brought by Jehovah's Witnesses, because door-to-door canvassing is mandated by their religion. As we noted in Murdock v. Pennsylvania, 319 U.S. 105, 108, 63 S.Ct. 870 (1943), the Jehovah's Witnesses "claim to follow the example of Paul, teaching 'publicly, and from house to house.' Acts 20:20 . . . . In doing so they believe that they are obeying a commandment of God." Moreover, because they lack significant financial resources, the ability of the Witnesses to proselytize is seriously diminished by regulations that burden their efforts to canvass door-to-door."

*Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 160-61 (2002).

Para un recuento jurisprudencial respecto a la invalidación por parte del Tribunal Supremo de los Estados Unidos de reglamentación estatal que impone restricciones al ejercicio de los derechos consagrados en la Primera Enmienda, véase *Hynes v. Mayor and Council of Oradell*, 425 U.S. 610, 96 (1976); *Martin v. City of Struthers*, 319 U.S. 141 (1943); *Murdock v. Pennsylvania*, 319 U.S. 105 (1943); *Jamison v. Texas*, 318 U.S. 413 (1943); *Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Schneider v. State* (Town of Irvington), 308 U.S. 147 (1939); *Lovell v. City of Griffin*, 303 U.S. 444 (1938).

dispositiva de la controversia en cuestión, ni será determinante en la resolución de ésta. A esos efectos, la mayoría parece ser consciente del hecho de que, independientemente de la respuesta a la pregunta que se nos certifica, el foro federal, atendiendo los reclamos constitucionales de las partes, podría resolver que los derechos constitucionales consagrados en la Primera Enmienda tienen preeminencia sobre el derecho de propiedad de la Asociación de Residentes, lo que haría de nuestra intervención en esta etapa de los procedimientos un esfuerzo fútil.[32]

De otra parte, el foro federal podría determinar que la delegación del municipio de las funciones de mantenimiento y alumbrado de las calles de un complejo residencial a su asociación de residentes constituye acción de estado, por lo que BCC no puede negarse a permitir el ejercicio del derecho a la libertad de culto de los demandantes, independientemente de su naturaleza

---

[32] En *Marsh v. Alabama*, 326 U.S. 501 (1946), el Tribunal Supremo de los Estados Unidos resolvió que en un pueblo operado enteramente por una compañía privada, la cual era dueña de sus calles, edificios, negocios comerciales y aceras, la primera enmienda tenía preeminencia sobre el derecho propietario de la compañía. El Tribunal Supremo razonó que el pueblo en cuestión, a pesar de ser propiedad privada, era el equivalente funcional a cualquier otro pueblo de los Estados Unidos, por lo que constituía una violación a la Primera Enmienda prohibir a un grupo de ciudadanos particulares, precisamente a un grupo de Testigos de Jehová, la distribución de material religioso dentro del complejo urbanístico. Este caso no ha sido revocado por el Tribunal Supremo federal, si bien se ha reducido significativamente el ámbito de su aplicación a centros comerciales privados. Véase José Julián Álvarez González, *Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos* 1248-1249 (Temis 2010). Véase también, Laurence Tribe, *Constitutional Choices* 248-266 (Harvard University Press, 1985).

demanial o patrimonial.[33] En lo que respecta a la doctrina de acción de estado, cabe señalar que el Tribunal Supremo de los Estados Unidos ha identificado varios factores que las cortes deben considerar al momento de determinar si un particular funge como actor estatal en determinadas circunstancias. Entre éstos se encuentra indagar respecto a si el particular ha asumido una función "tradicionalmente pública". Véase *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 378 (1995) *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). De esta manera, el requisito de acción estatal se habrá satisfecho cuando la actividad realizada por el particular sea una función que ha sido tradicionalmente la prerrogativa exclusiva del Estado. *Rendell-Baker*, 457 U.S. en la pág. 842.

Así, un somero análisis de nuestro desarrollo urbano, así como de la jurisprudencia relativa a la naturaleza de las calles en nuestro ordenamiento, llevaría a la conclusión de que la función de proveer mantenimiento a éstas, garantizar su acceso, recogido de basura, ofrecimiento de servicios básicos y de primera necesidad, ha sido tradicionalmente una prerrogativa exclusiva del gobierno estatal o de los gobiernos

---

[33] Algunos comentaristas sostienen que muchas de las inconsistencias y contradicciones en la jurisprudencia relativa a la doctrina de acción estatal son atribuibles a la tendencia de los tribunales de aplicar distintos estándares de análisis dependiendo de la naturaleza del derecho constitucional invocado, sin articular expresamente esas diferencias. Así, en los casos que involucran reclamos al amparo de violaciones al derecho a la libertad de culto o discrimen racial, los tribunales estarán mucho más dispuestos a encontrar que se cumple con el requisito de acción estatal. Véase Sheila S. Kennedy, *When is Private Public?* 11 Geo. Mason UCRLJ 11, 203, 215 (2000).

municipales.[34] Precisamente en atención a esa función pública, la Ley Hipotecaria requiere para la inscripción de desarrollos residenciales urbanos, la segregación y enajenación de las calles a favor del Municipio. Véase Ley Hipotecaria y del Registro de Propiedad, Art. 93, 30 L.P.R.A. sec. 2314; Margarita E. García Cárdenas, *Derecho de Urbanizaciones: servidumbres en equidad*, *controles de acceso e instalaciones vecinales* 80 (Interjuris 2010).

La profesora García Cárdenas explica, además, que en Puerto Rico, la prohibición legal de fincas enclavadas está estrechamente relacionada a la naturaleza pública de las calles. Enfáticamente señala que las calles **no pueden pertenecer a una asociación de residentes** pues tal titularidad supondría que las estructuras residenciales dentro de la urbanización no tendrían salida propia a una vía pública. De esta manera, y de particular relevancia a la controversia que nos ocupa, si un desarrollador decide traspasar las calles a la asociación de residentes y no al municipio, éstas no pertenecerán en común pro indiviso a los titulares, en atención a la personalidad jurídica propia de la asociación. Explica que la Ley de Condominios contempla la cotitularidad de los pasillos y los elevadores precisamente en atención a la prohibición de fincas enclavadas y para garantizar que los residentes puedan acceder la vía pública sin necesidad de entrar en la propiedad de otra persona. Finalmente, indica que,

---

[34] Así lo reconoció la Corte de Apelaciones de Estados Unidos para el Primer Circuito al reconocer que, en Puerto Rico, controlar el acceso a las calles sometidas al régimen de control de acceso es una función inherentemente pública. Véase *Watchtower Bible and Tract Society of New York, Inc. v. Sagardía De Jesus*, 634 F.3d 3, 10 (2011).

para que una Asociación de Residentes pueda reclamar un interés propietario sobre las calles de la urbanización, ésta tendría que establecer servidumbres de paso en cuanto a la totalidad de las calles hasta la salida a la vía pública, pues de lo contrario cada lote residencial sería una finca enclavada en clara violación al artículo 500 del Código Civil, 31 L.P.R.A. sec. 1731. Véase Margarita García Cárdenas, *supra*, págs. 132-138.

Resulta inquietante que, a pesar de esta realidad, la reglamentación actual permita el acceso a urbanizaciones a través de vías de naturaleza privada inscritas a favor de un desarrollador o de una asociación de residentes sin requerirles las servidumbres legales que le darían acceso a los lotes residenciales a la vía pública. Véase *Reglamento Núm. 8068 de la Junta de Planificación de 7 de septiembre de 2011*. No obstante, esa reglamentación de dudosa legalidad no estaba vigente al momento de los hechos que subyacen el recurso ante nos.

Como adelantamos, los hechos reseñados en la *Opinión, Orden y Certificación al Tribunal Supremo de Puerto Rico* nos remiten al acuerdo mediante el cual BCC logró inscribir las calles de la urbanización en nombre de la Asociación de Residentes. Al afirmar que nuestro ordenamiento jurídico vigente contempla la existencia de calles privadas y discutir extensamente las interpretaciones doctrinales del artículo 256 de nuestro Código Civil, para luego ampararse en una coletilla del texto de éste, la mayoría pasa por alto la complejidad del reclamo del Municipio de Dorado ante el foro federal,

así como las consideraciones de política pública que subyacen la pregunta certificada.

Conviene repasar entonces la redacción precisa de los artículos del Código Civil que nos ocupan, con tal de exponer las inconsistencias que la lectura textualista que suscribe una mayoría de este Tribunal supone. El artículo 255 del Código Civil, al describir los bienes de dominio público, dispone lo siguiente:

> "Son bienes de dominio público, los destinados al uso público, como los caminos, canales, ríos, torrentes, y otros análogos".

Cód. Civ. art. 255, 31 L.P.R.A. sec.1024.

El artículo 256 del Código Civil, por su parte dispone lo siguiente:

> Son bienes de uso público en Puerto Rico y en sus pueblos, los caminos estaduales y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, **costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.**

Cód. Civ. art. 256, 31 L.P.R.A. sec. 1025.

De una simple lectura de estos artículos, se desprende con claridad que la coletilla en que se ampara una mayoría de este Tribunal –a saber, **"costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico"**– no tiene el alcance de convertir un bien de uso público en privativo por el mero hecho de que éste no haya sido costeado con fondos públicos.[35] Más bien, los artículos en

---

[35] Además, si de textualismo se trata, es necesario precisar que nociones elementales de gramática y sintaxis militan en contra de la lectura que hoy suscribe una mayoría de este Tribunal del artículo 256. Como se aprecia en el articulado antes citado, el adjetivo "costeadas", antecedido por una coma, lo cual supone subordinación, aparece en femenino plural. Así, dicho adjetivo está destinado a cualificar el sustantivo femenino, y plural que lo antecede: "obras públicas de servicio general". Le recordamos a una mayoría de este

cuestión evidencian la importancia del **destino o la función** de los bienes al momento de calificarlos como demaniales o patrimoniales. Esto, por la función eminentemente pública que los bienes de uso público desempeñan en nuestra sociedad, y no por el origen de los fondos que son utilizados para su construcción, mantenimiento o financiamiento.[36] Los bienes contenidos en

---

Tribunal que en la lengua española, cuando se pretende adjetivar un grupo de sustantivos de diverso género, lo correcto es la utilización del adjetivo en género masculino plural.

[36] Como contradictoriamente señala la Opinión Mayoritaria, algunos comentaristas españoles han indicado que el requisito de que los bienes de uso público a los que alude el artículo 344 del Código Civil español sean costeados por los pueblos o provincias es uno "injustificado". Véase *Opinión Mayoritaria*, en la pág. 25. Nótese que el artículo 344 del Código Civil español, el cual hace alusión a que los bienes deben ser costeados por los **pueblos o provincias** intenta distinguir los bienes de dominio público del gobierno central español, a los que hace referencia el artículo 339 del Código Civil español, de aquéllos que son del dominio de los pueblos o provincias, los cuales están regulados por el artículo 344. Es por esto que el artículo 344 del Código Civil español alude a los caminos provinciales, mientras que nuestro artículo 256 alude a los estaduales. Precisamente en atención a esta distinción, surge la necesidad de establecer que aquellos bienes de uso público contemplados en el artículo 344, análogo a nuestro artículo 256, son patrimonio del Estado, aun si son **costeados por los pueblos o provincias**. Por tanto, es difícil sostener que la frase "costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico" excluye la posibilidad de que un bien de uso público pueda ser costeado por un particular. Una contextualización histórica del artículo en cuestión claramente apuntaría a que el gobierno central español quiso asegurar la demanialidad de aquellos bienes que no fuesen costeados directamente por el gobierno estatal sino con fondos de los gobiernos provinciales. En el caso de Puerto Rico, la frase resulta aún más injustificada e innecesaria, pues nuestros municipios no cuentan con la autonomía política y fiscal con la que cuentan las provincias españolas y nuestra disposición hace alusión expresa a "los mismos pueblos o con fondos del tesoro de Puerto Rico". Corresponde a la Asamblea Legislativa, precisamente en momentos en que contempla la posibilidad de atemperar el Código Civil a nuestra realidad social, decretar la obsolescencia de esta frase y su inaplicabilidad a nuestro esquema gubernamental. Véase Sabino Álvarez-

ambos artículos son, por tanto, bienes de uso público.

Cabe destacar que, en el caso de estos bienes, su mera

conceptualización como privados desvirtuaría su función

pública. Precisamente en atención a esto, el artículo 274

del Código Civil, 31 L.P.R.A. sec. 1082, dispone, en su

segundo párrafo que:

> Hay otras cosas, por el contrario, que aunque por su naturaleza son susceptibles de propiedad particular, pierden esta cualidad como consecuencia de la aplicación que de ellas se hace para fines públicos incompatibles con la propiedad privada, si bien pueden adquirir su primitiva condición tan pronto cese el fin público que se las hubiera dado; tales son los **terrenos** de las carreteras, calles y plazas públicas". (énfasis suplido).

Como se puede apreciar, este articulado parte de la

premisa de que las calles tienen un fin público

incompatible con la propiedad privada. Precisamente por

esto, cuando una **calle** se encuentra en un **terreno** cuya

primitiva condición es de propiedad particular, dicho

terreno está afectado al uso público, en tanto sobre él

existe un bien de uso público el cual, conforme al

artículo antes citado, consistiría en una carretera, una

calle o una plaza pública. Si fuese de otra manera, el

artículo haría referencia a las **calles** en sí y no a los

**terrenos** sobre las cuales éstas ubican.

---

Gendín, *El dominio público: Su naturaleza jurídica* 45-50 (Bosch 1956). Véase, además Michel J. Godreau & Juan A. Giusti, *Las concesiones de la corona y propiedad de la tierra en Puerto Rico*, 62 Rev. Jur. U.P.R. 351, 562-564 (1993), para una explicación respecto a cómo no existe una diferencia entre los bienes enumerados en el artículo 255 de nuestro Código Civil y aquellos contenidos en el artículo 256 pues "el factor decisorio es el uso público". *Id.* Incluso, comentaristas citados por la opinión mayoritaria reafirman que "la condición de dominio público no la atribuye al bien la circunstancia de ser propia del Estado, el Municipio u otros entes, sino su condición de uso público, o su destino al servicio público". I-3 J.L. Lacruz Berdejo, *Elementos de Derecho Civil* 42 (Bosch 1990).

Según discutimos, el Municipio alega que BCC está exenta de cumplir con las órdenes emitidas por el Tribunal de Distrito bajo el fundamento de que esa urbanización constituye un complejo residencial privado cuyas calles pertenecen a la Asociación de Residentes y no al Municipio pues fueron costeadas por el desarrollador. Para poder atender efectivamente ese reclamo, es imprescindible evaluar la validez del acuerdo suscrito entre el desarrollador y el Municipio. De esta manera, sería útil evaluar, en el contexto de los hechos particulares de este caso, si un Municipio, mediante un acuerdo con un desarrollador, podía desvirtuar el carácter público de las calles residenciales en Puerto Rico, según éste había sido establecido mediante los distintos reglamentos de planificación vigentes al momento del acuerdo, así como por nuestra jurisprudencia, la Ley Hipotecaria e incluso la propia Ley de Municipios Autónomos. En relación a esto, extrañamente, la Opinión expresamente indica que:

> Es meritorio aclarar que los acuerdos a los que haya llegado el Municipio de Dorado con los promotores o desarrolladores de la urbanización BBC (sic) no son pertinentes para resolver el recurso particular que está ante nosotros. Eso está fuera del alcance de nuestra función adjudicadora pues nos circunscribiremos a determinar si nuestro ordenamiento permite que esa clase de bienes existan dentro de la modalidad privativa.

*Opinión Mayoritaria*, pág. 11, n.11.

Estas expresiones evidencian fehacientemente la inutilidad e intrascendencia del dictamen que hoy emite una mayoría de este Tribunal. Esto, en atención al reconocimiento de que la determinación respecto a si, al

amparo del derecho puertorriqueño, los acuerdos a los que llegó el Municipio de Dorado con los Desarrolladores de BCC son válidos aparentemente le corresponderá, en última instancia, al foro federal.

Resulta inconcebible que este Tribunal, obviando los requisitos del mecanismo de certificación jurisdiccional, emita una opinión consultiva que marca un retroceso en la historia del desarrollo urbano de nuestro País y trastoca por completo las nociones más básicas de la planificación urbana como vehículo para la sana convivencia social y un estado de derecho democrático. Al así proceder, desata una impetuosa batalla entre lo público y lo privado; entre el dueño y el intruso; entre el rico y el pobre; entre el individualismo extremo y la vida en comunidad.[37]

La decisión que en su día emita ese foro tendrá que, inevitablemente, evaluar los planteamientos constitucionales de las partes. Esto hará de la respuesta tan abarcadora y defectuosa que la mayoría de este

---

[37] En cuanto a la propagación de estas tendencias individualistas en nuestra sociedad, el profesor Fernando Picó señala lo siguiente:

"Siempre el afán de restringir la libertad de movimiento, de mantener bajo control y sobre todo de segregar las clases sociales y los sectores ideológicos [...] Solo quiero añadir una última observación. Hay gente que no se atreve a vivir en un sitio donde no esté encerrada, porque la libertad de movimiento de los otros le incomoda. A todos los miedos históricos, desde los caribes hasta los filibusteros, desde los cimarrones hasta los comunistas, hemos añadido el miedo a nosotros mismos. Este es el miedo más nefasto. Comenzaremos a ser libres cuando lo perdamos".

Fernando Picó, *El miedo a nosotros mismos: Ritos de reclusión y encerramientos*, en Elsa Arroyo & Julia Cristina Ortiz Lugo, *Leer para escribir* 322 (Plaza Mayor 1994).

Tribunal ofrece durante el día de hoy una completamente inútil. Sin embargo, las consecuencias inexorablemente desestabilizadoras de este dictamen para el derecho puertorriqueño subsistirán, salvo que la Asamblea Legislativa decida tomar cartas en el asunto. Por entender que nuestra legitimidad como el máximo foro judicial de nuestra Nación ha sido lacerada irremisiblemente por el precedente, tanto procesal como sustantivo, que hoy una mayoría pauta, disiento.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Watchtower Bible and Tract Society of New York, Inc., et al.

     Recurridos

       v.

Municipio de Dorado, et al.; United States District Court for the Distric of Puerto Rico

     Peticionarios

CT-2013-0014

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 18 de noviembre de 2014.

Si fuera un artículo de revista jurídica, la Opinión del Tribunal sería invaluable. Sin lugar a dudas, y sin pasar juicio sobre su contenido, esa ponencia investiga y discute con rigor académico si las leyes actuales de Puerto Rico permiten la existencia de calles privadas. Pero a diferencia del Tribunal, opino que la Asociación de Residentes de Brighton Country Club (BCC) es una parte indispensable y su ausencia en este pleito nos priva de jurisdicción para contestar la pregunta certificada. Bonilla Ramos v. Dávila Medina, 185 DPR 667, 677 (2012); García Colón v. Sucn. González, 178 DPR 527, 548 (2010). El hecho de que el Tribunal no resuelva si las calles en controversia son públicas o

propiedad privada de la Asociación de Residentes de BCC, demuestra que faltan elementos muy importantes y por eso se emite una opinión consultiva que no resuelve un caso y controversia. E.L.A. v. Aguayo, 80 DPR 552 (1958).

Como el Tribunal prefiere, en ausencia de una parte indispensable, emitir una opinión consultiva en lugar de dejar sin efecto el recurso de certificación, disiento con mucho respeto del criterio de mis compañeros.

I

Watchtower Bible Tract Society of New York y la Congregación Cristiana de los Testigos de Jehová de Puerto Rico Inc., presentaron una demanda en el Tribunal Federal para el Distrito de Puerto Rico contra el Gobierno de Puerto Rico y varios municipios. En esencia, adujeron que la Ley de Control de Acceso, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 LPRA sec. 64 et seq., era inconstitucional de su faz y en su aplicación por quebrantar sus derechos constitucionales de libertad de expresión y libertad de culto. Sostuvieron que esa ley les impedía entrar a urbanizaciones con calles públicas.

Luego de varios incidentes, el Tribunal de Apelaciones para el Primer Circuito resolvió que la Ley Núm. 21, íd., era constitucional de su faz, pero no en su aplicación. Watchtower Bible and Track Society of New York v. Sagardía, et al., 634 F. 3d 3 (1er Cir. 2011). En particular, sostuvo que la forma en que se implantó la ley

violaba el derecho de los demandantes a ejercer sus derechos constitucionales. Íd.

Devuelto el caso al Tribunal de Distrito, se ordenó a los municipios demandados que presentaran alternativas para permitir que los demandantes pudieran entrar a las urbanizaciones con control de acceso. Durante esa fase de cumplimiento de sentencia, el Municipio de Dorado adujo que la orden no aplicaba a la urbanización Brighton Country Club (BCC), que estaba localizada dentro de su demarcación territorial. Fundamentó esa aseveración en que las calles de BCC eran privadas porque se costearon con fondos privados y su propiedad no se había transferido a la autoridad municipal. Además, planteó que, según surgía de la Escritura Núm. 1 de 16 de febrero de 2005, otorgada ante el Notario Felipe Sanabria Quiñones, esas calles pertenecían a la Asociación de Residentes de BCC. De esa forma, expresó que la Asociación de Residentes de BCC era quien tenía la titularidad de las calles en controversia.

El 19 de junio de 2013, el Tribunal de Distrito federal nos certificó la pregunta siguiente: *Do the laws and Constitution of Puerto Rico allow for private roads?* El 17 de julio de 2013 acogimos la solicitud para auscultar si las leyes de Puerto Rico permiten la existencia de calles privadas.

Luego de la comparecencia de varios amigos de la corte y de estudiar con detenimiento los alegatos de las partes,

convocamos a una vista oral que se celebró el 11 de febrero de 2014.

En el día de hoy, la Opinión del Tribunal, pág. 41, concluye que en la actualidad nuestro ordenamiento legal permite la existencia de calles privadas. Sin embargo, el Tribunal no aplica el derecho investigado a los hechos concretos que certificamos. Es decir, no resuelve si las calles de BCC son privadas o no.

## II

**A.** La Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, regula la acumulación de partes dentro de un pleito. Sobre la acumulación de partes indispensables, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, dispone que:

> Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

Esa regla se inspira en dos principios que permean nuestro ordenamiento jurídico: (1) la protección constitucional que impide que las personas sean privadas de su libertad y de su propiedad sin un debido proceso de ley y; (2) la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. Cepeda Torres v. García Ortiz, 132 DPR 698, 704 (1993).

La acumulación de una parte indispensable procede cuando haya personas que tengan un interés común sin cuya presencia no pueda adjudicarse una controversia. Por

consiguiente, se ha mencionado que una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada en su ausencia. Bonilla Ramos v. Dávila Medina, supra, pág. 677; Mun. de San Juan v. Bosque Real, S.E., 158 DPR 743 (2003); Sánchez v. Sánchez, 154 DPR 645 (2001).

Sin embargo, no se trata de un mero interés en la controversia, sino uno "de tal orden que impida la confección de un decreto adecuado sin afectarlo". Deliz et als. v. Igartúa et al., 158 DPR 403, 433 (2003). El interés debe ser, además, real e inmediato. Romero v. S.L.G. Reyes, 164 DPR 721, 733 (2005). El enfoque requiere que se evalúen individualmente las circunstancias de cada caso. García Colón v. Sucn. González, supra, pág. 548.

La falta de parte indispensable constituye un planteamiento tan vital que puede presentarse en cualquier momento, es decir, puede presentarse por primera vez en apelación e incluso puede suscitarse sua sponte por un tribunal apelativo, ya que en ausencia de parte indispensable, el tribunal carece de jurisdicción. García Colón v. Sucn. González, supra, pág. 550; Romero v. S.L.G. Reyes, supra, pág. 733. Por tal razón, la sentencia que se emita en ausencia de parte indispensable es nula y vulnerable a un ataque colateral. Unisys v. Ramallo Brothers, 128 DPR 842, 859 (1991).

**B.** La certificación interjurisdiccional permite que un tribunal federal someta a este Foro preguntas sobre controversias dudosas que sean pertinentes al derecho de esta jurisdicción. Martínez Marrero v. González Droz, 180 DPR 579 (2011); Pan Ame. Comp. Corp. v. Data Gen. Corp., 112 DPR 780 (1982). En nuestro ordenamiento jurídico, ese mecanismo se regula por el Art. 3.002f de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24s(f), y por la Regla 21 de nuestro Reglamento, 4 LPRA Ap. XXI-B.

Con el mecanismo de la certificación interjurisdiccional se preserva y respeta "la función prístina de las cortes estatales de interpretar y formular el derecho de [sus respectivos] estados", contribuyendo a que se alivien en buena parte las tensiones inherentes al sistema federalista. Martínez Marrero v. González Droz, supra, pág. 585, citando a Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, pág. 783. Ese procedimiento ha dado lugar "a una útil colaboración entre las dos jurisdicciones, la federal y la estatal". Medina & Medina v. Country Pride Foods, 122 DPR 172, 181 (1988). Véase, también, J. Remy Nash, Examining the Power of Federal Courts to Certify Questions of State Law, 88 Cornell L. Rev. 1672 (2003).

Las preguntas a certificarse deben enmarcarse en un "contexto de hechos detallados y específicos y la contestación del tribunal debe ser obligatoria para las partes". Pan Ame. Comp. Corp. v. Data Gen. Corp., supra,

pág. 784. Recuérdese que la certificación es un medio "para realizar los propósitos de la abstención de la Corte federal en un caso en que ya las partes están sometidas a su jurisdicción y que, por disposición expresa de ese tribunal, comparecen al foro estatal a ventilar las cuestiones que corresponden a éste". Íd.

El trámite de certificación interjurisdiccional ante este Foro

> se produce en un procedimiento adversativo en el que las partes se encuentran debidamente ante este Tribunal, pueden someter alegatos --los cuales deberán ser notificados a la Corte federal-- y presentar argumentos orales, como se hizo en este caso. Tenemos, pues, jurisdicción sobre las partes y sobre la materia y nuestra decisión constituye cosa juzgada. Íd., pág. 790.

En Pan Ame. Comp. Corp. v. Data Gen. Corp., íd., pág. 784, dejamos claro que la certificación procede si la contestación a la pregunta certificada puede ser determinante para el pleito que pende ante el foro federal. Dicho de otro modo, las certificaciones interjurisdiccionales deben cumplir cabalmente con la doctrina de justiciabilidad, y en su consecuencia, atender un caso y controversia. Íd., pág. 790. Véase, además, Guzmán v. Calderón, 164 DPR 220, 228 (2005).

Sabido es que nuestra jurisdicción como foro judicial se limita a casos justiciables. IG Builders et al. v. BBVAPR, 185 DPR 307, 334 (2012). En Moreno v. Pres. U.P.R. II, 178 DPR 969, 973 (2010), indicamos que una "controversia abstracta, ausente un perjuicio o amenaza real y vigente a los derechos de la parte que los reclama,

no presenta el caso y controversia que la Constitución exige para que los tribunales puedan intervenir". Véanse, además, Torres Santiago v. Depto. Justicia, 181 DPR 969, 981 (2011); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920, 931 (2011); U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 279-280 (2010); Lozada Tirado et al. v. Testigos Jehová, 177 DPR 893, 907-908 (2010).

### III

La contestación a la pregunta certificada requiere que determinemos si nuestras leyes permiten que la Asociación de Residentes de BCC sea dueña de las calles de su urbanización. No obstante, ante la ausencia de la Asociación de Residentes de BCC en el pleito, estamos impedidos de resolver de quién es la titularidad de las calles en controversia.

Sin lugar a dudas, si resolvemos ese asunto podríamos afectar el título de propiedad que tiene la Asociación de Residentes de BCC sobre las calles de su urbanización, según consta en la Escritura Núm. 1 de 16 de febrero de 2005, otorgada ante el Notario Felipe Sanabria Quiñones. Supongamos que este Tribunal resolviera que en nuestro ordenamiento no existen calles privadas. Esa determinación privaría automáticamente a la Asociación de Residentes de BCC de su derecho propietario sin que se le garantice su debido proceso de ley que incluye: (1) ser notificado de forma adecuada del proceso; (2) oportunidad de ser oído; (3) derecho a contrainterrogar testigos y examinar

evidencia presentada en su contra y; (4) tener asistencia de abogado, entre otros. Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 889 (1993). Ante ese escenario, es forzoso concluir que la Asociación de Residentes de BCC es una parte indispensable y sin su presencia no puede adjudicarse la controversia que nos certificó el Tribunal de Distrito federal. Bonilla Ramos v. Dávila Medina, supra; García Colón v. Sucn. González, supra; Romero v. S.L.G. Reyes, supra; Mun. de San Juan v. Bosque Real, S.E., supra; Sánchez v. Sánchez, supra.

Por otro lado, si resolviéramos que las calles de BCC son privadas, nuestro dictamen no adjudicaría la cuestión con efecto de cosa juzgada, debido a la ausencia de una parte indispensable. Por eso, la parte recurrida podría insistir en su reclamo de acceso a lo que considera como vías públicas. Por todo lo anterior, cualquier determinación nuestra sobre los méritos de esta certificación está sujeta a un ataque colateral.

El hecho de que el Tribunal y la Opinión disidente del compañero Juez Asociado señor Estrella Martínez no resuelvan si las calles en controversia son públicas o propiedad privada de la Asociación de Residentes de BCC, robustece mi conclusión de que existe una parte indispensable que no está en el pleito y por eso se decide emitir una opinión consultiva. Como habrá notado el lector, la Opinión del Tribunal y la Opinión disidente del compañero Juez Asociado señor Estrella Martínez realizan

una investigación jurídica abarcadora sobre la controversia traída ante nuestra consideración, pero evitan adjudicar si las calles de la urbanización BCC son públicas o propiedad privada de la Asociación de Residentes de BCC.

Nuestros precedentes son claros en establecer que las certificaciones interjurisdiccionales deben cumplir cabalmente con la doctrina de justiciabilidad, y en su consecuencia, resolver un caso y controversia. Guzmán v. Calderón, supra, pág. 228; Pan Ame. Comp. Corp. v. Data Gen. Corp., supra, pág. 790. Es erróneo que emitamos un auto de certificación para atender un caso, investiguemos el derecho aplicable y luego no lo apliquemos a los hechos concretos ante nuestra consideración. Ello es contrario a la jurisprudencia que por décadas hemos elaborado sobre la doctrina de justiciabilidad. IG Builders et al. v. BBVAPR, supra, pág. 334; Torres Santiago v. Depto. Justicia, supra, pag. 981; Asoc. Fotoperiodistas v. Rivera Schatz, supra, pág. 931; Moreno v. Pres. U.P.R. II, supra, pág. 973; U.P.R. v. Laborde Torres y otros I, supra, págs. 279-280; Lozada Tirado et al. v. Testigos Jehová, supra, págs. 907-908; E.L.A. v. Aguayo, supra.

En conclusión, la ausencia de la Asociación de Residentes de BCC en este caso impide que podamos contestar la pregunta que se nos certificó. Emitir una opinión consultiva, además de ser contrario a nuestro ordenamiento, no soluciona la ausencia de una parte

indispensable. La adjudicación correcta de este caso requiere que dejemos sin efecto el recurso de certificación en vez de emitir una opinión consultiva.[38]

**IV**

Por los fundamentos antes expuestos, disiento respetuosamente del curso seguido por este Tribunal. Ante la ausencia de la Asociación de Residentes de BCC en el pleito, deberíamos dejar sin efecto el recurso de certificación en lugar de emitir una opinión consultiva.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

---

[38] El que no contestemos la pregunta certificada no priva de alternativas a las partes ni al foro federal. Ante la ausencia de la parte indispensable en este pleito, la Asociación de Residentes de BCC, el Tribunal de Distrito federal tiene varias opciones. Por ejemplo, puede excluir a la Urbanización BCC de la orden que emitió contra el Municipio de Dorado en este caso. Por otro lado, puede traer al pleito a la Asociación de Residentes de BCC en esta etapa de los procedimientos para que presente su postura. Claro está, es el Tribunal de Distrito federal y no este Foro quien tiene que determinar cuál es el curso de acción procedente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Watchtower Bible and Tract Society of New York, Inc., et al.<br><br>    Recurridos<br><br>        v<br><br>Municipio de Dorado, et al.; United States District Court for the District of Puerto Rico<br><br>    Peticionarios | CT-2013-0014 | Certificación |

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 18 de noviembre de 2014.

Hay respuestas que generan más interrogantes e incertidumbres que la pregunta en sí misma. Estamos ante una de esas situaciones. Hoy, una Mayoría de este Tribunal cerró el camino de la adecuada planificación dejando a un lado la finalidad social de la ordenación territorial y, más importante aún, el reconocimiento de la naturaleza pública de las calles de desarrollos urbanísticos, principios firmemente arraigados en nuestro ordenamiento jurídico. En su lugar, optaron por la ruta incierta de la privatización de las calles, lo cual generará múltiples controversias y dudas en torno a la protección del

ambiente, los derechos individuales de propietarios y limitará el rol del Estado en la tan importante gestión de la planificación urbana.

Ante la pregunta certificada por el Tribunal Federal para el Distrito de Puerto Rico (Tribunal de Distrito), correspondía enmarcar la contestación en que de ordinario en nuestro ordenamiento las calles son bienes de dominio público destinadas al uso público. Por esta razón y los fundamentos que esbozo a continuación, disiento del razonamiento adoptado por una Mayoría de este Tribunal.

I

Los hechos pertinentes a la controversia por la cual nos fue remitida esta certificación interjurisdiccional tienen su génesis cuando el 18 de mayo de 2004, Watchtower Bible Tract Society of New York y la Congregación Cristiana de los Testigos de Jehová de Puerto Rico, Inc., recurrieron al Tribunal de Distrito. Mediante el mecanismo de sentencia declaratoria solicitaron que se determinara la constitucionalidad de la Ley Núm. 21 del 20 de mayo de 1987, conocida como la Ley de Control de Acceso, 23 LPRA sec. 64 *et seq.* (Ley Núm. 21). Arguyeron que la referida ley era inconstitucional tanto de su faz como en su aplicación. Ello, debido a que las urbanizaciones con acceso controlado no permitían que los Testigos de Jehová entraran para expresar sus creencias religiosas. Tras evaluar las mociones de sentencia sumaria presentadas por ambas partes, el Tribunal de Distrito decretó la

constitucionalidad de la mencionada ley. <u>Watchtower Bible Tract Soc of New York v. Sánchez Ramos</u>, 647 F.Supp. 2d 103 (D.P.R. 2009).

No obstante, los demandantes recurrieron al Tribunal Federal de Apelaciones para el Primer Circuito (Primer Circuito) y cuestionaron la determinación del Tribunal de Distrito. Luego de varios trámites procesales, el Primer Circuito confirmó la desestimación del reclamo de inconstitucionalidad de su faz de la Ley Núm. 21. Sin embargo, no estuvo conforme con la constitucionalidad en su aplicación. Por consiguiente, devolvió el expediente y le ordenó al Tribunal de Distrito que continuara con los procedimientos de acuerdo a las normas dispuestas en su decisión. En esencia, requirió que se garantizara el acceso de los Testigos de Jehová a las urbanizaciones con un sistema de control de acceso regulado por un guardia de seguridad. En el caso de las urbanizaciones cuyo acceso no estaba regulado por un guardia de seguridad, es decir, que poseían un control de acceso mecánico, ordenó que presentaran un plan de acción dirigido a garantizar el acceso. *Véase* <u>Watchtower Bible and Tract Society of New York, Inc. v. Sagardía de Jesús</u>, 634 F.3d 3 (1er Cir. 2011).

Ante este cuadro, el 18 de junio de 2012 el Tribunal de Distrito nos remitió una primera certificación para que determináramos si los sistemas de control de acceso mecánico eran permitidos bajo la Ley Núm. 21, y la

constitucionalidad de este sistema. En aquella ocasión, este Tribunal no expidió la certificación interjurisdiccional por entender que a la luz de la decisión y orden dictada por el Primer Circuito, la determinación que pudiera emitir este Tribunal no iba a ser un factor determinante en la disposición del caso ante la consideración del Tribunal de Distrito. Por consiguiente, no cumplía con los requisitos establecidos en el Art. 3.002 de la Ley Núm. 201-2003, conocida como la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, 4 LPRA sec. 24s(f), ni con la Regla 25 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, R. 25.[39]

Así las cosas, el Tribunal de Distrito le requirió a los municipios que presentaran un plan de acción en el que se estableciera cómo iban a asegurar el acceso a las urbanizaciones que dentro de su demarcación territorial tenían control de acceso regulado por guardias de seguridad y aquellas en las que no. Ante esta orden, el Municipio de Dorado (Municipio) alegó que el Brighton Country Club (BCC) es una urbanización privada que está completamente cerrada al público.

Según surge de los autos, la BCC es una urbanización compuesta por un grupo de residencias que opera con control de acceso mecánico. Ésta consta de una asociación de residentes que se encarga de garantizar la calidad de vida de la comunidad. En la Escritura Núm. 1 de 16 de

---

[39]*Véase* Resolución del Tribunal Supremo de Puerto Rico de 7 de septiembre de 2012, en el caso CT-2012-10.

febrero de 2005, bajo el acápite de *Extent of Members'*
*Easement*, se estableció que las calles del proyecto serían
consideradas elementos comunes de la BCC y, por
consiguiente, la asociación de residentes asumía la
obligación de brindarles mantenimiento. También se le
otorgó la facultad de establecer restricciones razonables
para el uso de las calles del proyecto, aun cuando éstas
fueran más restrictivas que el ordenamiento legal vigente.
En fin, de acuerdo a la Escritura de Segregación, dentro
de la urbanización se identificaron cuatro calles, cuyo
título fue transferido a la asociación de residentes.

Cónsono con estas disposiciones, el 23 de julio de
2007 el Municipio emitió una Certificación en la que
endosó el proyecto de BCC, condicionado a que las calles y
el alumbrado permanecieran privados. Del mismo modo, se
estableció como condición que el mantenimiento de éstos
estuviese a cargo de la asociación de residentes. Por otra
parte, BCC recibió el endoso para que la urbanización
pudiese tener acceso controlado a tenor con la mencionada
Ley Núm. 21.

Ante este cuadro fáctico, el 11 de junio de 2013 el
Tribunal de Distrito nos remitió una segunda solicitud de
certificación interjurisdiccional para que determinemos si
al amparo de la Constitución y las leyes de Puerto Rico
pueden existir calles residenciales privadas.

Expedido el auto, le requerimos a las partes la presentación de alegatos.[40] Además, solicitamos la presencia del Departamento de Justicia como amigo de la corte, quien compareció a través de la Oficina de la Procuradora General. A su vez, autorizamos la comparecencia en igual capacidad a DRB Dorado Owner, LLC, Coco Beach Maintenance, Inc. y Serrallés Hotel, Inc.

Con el beneficio de los escritos presentados por las partes y los amigos de la corte, además de los argumentos planteados durante la vista oral celebrada el 11 de febrero de este año, procedemos a contestar la pregunta certificada.

II

Nuestro ordenamiento jurídico incorpora una serie de disposiciones dirigidas a clasificar los bienes y las cosas. Aunque, de ordinario, estos dos conceptos son utilizados con igual correspondencia, resulta pertinente destacar que su connotación es diferente. Es decir, mientras un bien se encuentra comprendido dentro del concepto cosa, no todas las cosas pueden ser catalogadas como bienes. En cuanto a esto, el Art. 252 del Código

---

[40] *Véase* Resolución del Tribunal Supremo de Puerto Rico de 17 de julio de 2013. En la misma se dispuso que "[s]e emite un auto de certificación para auscultar **únicamente** si las leyes de Puerto Rico permiten la existencia de calles privadas". (Énfasis suplido) Es decir, como máxime intérprete del derecho puertorriqueño, este Tribunal tiene ante su consideración una cuestión de estricto derecho civil. No nos corresponde disponer de toda la controversia ni dilucidar los reclamos constitucionales que fueron presentados ante el Tribunal de Distrito. Es preciso ceñirnos a la pregunta certificada.

Civil de Puerto Rico, 31 LPRA sec. 1021, establece que "[l]a palabra *bienes* es aplicable en general a cualquier cosa que pueda constituir riqueza o fortuna". En palabras del tratadista Vélez Torres, el concepto *bienes* puede ser definido de la siguiente manera:

> cosas, corporales o incorporales, susceptibles de apropiación por el hombre, que reportan a éste una utilidad desde el punto de vista económico o moral, siempre que tengan sustantividad propia. J.R. Vélez Torres, <u>Curso de Derecho Civil</u>, San Juan, 1983, T. II, pág. 35.

De esta forma, solamente las cosas que son susceptibles de apropiación pueden ser consideradas como bienes.

### A.

A tenor con lo anterior, el Código Civil de Puerto Rico diferencia los bienes de uso o dominio público de los bienes patrimoniales del Estado y los de propiedad privada. Asimismo, establece una distinción entre los bienes corporales e incorporales y los muebles e inmuebles.[41] Por consiguiente, y oportuno a la pregunta que tenemos ante nuestra consideración, solamente nos corresponde analizar el esquema tripartito de bienes en lo concerniente a las cosas respecto a su apropiación o pertenencia. Es decir, examinar la distinción entre los bienes comunes, públicos y patrimoniales. Procedemos.

En primer lugar, el Art. 253 de nuestro Código Civil, 31 LPRA sec. 1022, establece que las cosas y los bienes pueden ser comunes o públicos. En cuanto a las cosas

---

[41]*Véanse* 31 LPRA secs. 1024-1087.

comunes, el Art. 254 del mencionado Código, 31 LPRA sec. 1023, establece que son aquellas que no pertenecen a nadie en particular y pueden ser utilizadas libremente por los individuos. Es decir, por razón de su naturaleza, no pueden advenir propiedad particular de una persona.[42] Entre éstas se encuentran el aire, las aguas pluviales, el mar y sus riberas.

En contraposición, hay otras cosas que a pesar de que por razón de su naturaleza son susceptibles de apropiación particular, han sido sustraídas del derecho patrimonial individual y destinadas al uso del público en general. Esto es lo que conocemos como los bienes de dominio público. En cuanto a éstos, Colin & Capitant plantean que:

> lo forman los bienes que sirven para el uso de todos, como los ríos, los puertos, los caminos, las calles, las plazas públicas. Estos bienes, evidentemente, no están sometidos a las reglas de Derecho civil concernientes a la propiedad. A. Colin & H. Capitant, Curso Elemental de Derecho Civil, Madrid, Instituto Editorial Reus, 1961, T. II, V. II, pág. 80.

Particularmente, el Art. 255 de nuestro Código Civil, establece que "[s]on bienes de dominio público, los destinados al uso público, como los caminos, canales, ríos, torrentes, y otros análogos". 31 LPRA sec. 1024. Por su parte, el Art. 256 establece que:

> Son **bienes de uso público** en Puerto Rico y sus pueblos, los caminos estaduales y los vecinales, las plazas, **calles**, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.

---

[42]Vélez Torres, Curso de Derecho Civil, San Juan, 1983, T. II, pág. 37.

Todos los demás bienes que el Estado Libre Asociado de Puerto Rico o los municipios posean, son patrimoniales y se regirán por las disposiciones de este título. 31 LPRA sec. 1025. (Énfasis suplido).

Al analizar estos últimos dos artículos, el tratadista Vélez Torres indica que nuestros codificadores tuvieron una falta de rigor científico, en la medida que "sustancialmente, ambos preceptos son iguales, pues ambos se refieren a 'bienes de uso público' como los caminos, plazas, **calles**, etc". Vélez Torres, op. cit., pág. 38 (Énfasis suplido). No obstante, el hecho de que estén concebidos separadamente se explica debido a que los Arts. 255 y 256 de nuestro Código Civil fueron adoptados de los Arts. 339 y 344 del Código Civil Español, respectivamente. Éstos distinguen entre los bienes que pertenecen al gobierno central español y los que pertenecen a las provincias y pueblos españoles. Sin embargo, en nuestro ordenamiento no hay tal distinción. Por tanto, "el Código sólo se refiere a los bienes de dominio público de Puerto Rico, sin tomar en consideración los bienes de igual naturaleza, situados en la Isla, pertenecientes a Estados Unidos, los cuales están cubiertos y reglamentados por leyes del Congreso". Íd., pág. 39.

Los profesores Michel J. Godreau y Juan A. Giusti coinciden con que la distinción entre los Arts. 255 y 256 del Código Civil no está justificada, en tanto no hay una diferencia entre los bienes de dominio público y los bienes de uso público. M.J. Godreau & J.A. Giusti, Las

concesiones de la corona y propiedad de la tierra en Puerto Rico, Siglos XVI-XX: un estudio jurídico, 62 Rev. Jur. UPR 354, 562 (1993). Es decir, tanto los bienes de dominio como de uso público comparten las mismas características, son imprescriptibles, inembargables e inajenables, a menos que su uso público cese. *Íd.* pág. 564.[43]

A tenor con estas características, los profesores también destacan que el factor definitorio de los bienes de dominio público es que están destinados al uso público. En cuanto al carácter público de una cosa, el tratadista Puig Peña expresa que para que éste exista es necesario que la cosa (1) posea dependencia dominical respecto de la Administración, (2) haya una declaración de la naturaleza pública de la cosa o se determine por el modo de ser del mismo bien, y (3) haya un fin público para el cual se ha destinado el bien. F. Puig Peña, Tratado de Derecho Civil Español, Madrid, Ed. Revista de Derecho Privado, 1958, T.I, V.II, pág. 298. Por consiguiente, lo determinante para esta clasificación es el destino del bien.

---

[43]*Véase* Figueroa v. Municipio de San Juan, 98 DPR 534, 570 (1970). Además, es pertinente destacar, que las características de los bienes de dominio público también han sido reconocidas mediante legislación. Por ejemplo, el Art. 9.001 de la Ley Núm. 81 del 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos de Puerto Rico, 21 LPRA sec. 4451, establece que "[s]on bienes de dominio público los destinados a un uso o servicio público, tales como las plazas, calles, avenidas, paseos y obras públicas, de servicio general sufragadas por el municipio con fondos públicos. Los bienes de dominio público son inalienables, inembargables y no están sujetos a contribución alguna".

Al ser esta la característica determinante, si el fin público cesa, el bien se puede transformar en uno patrimonial susceptible de enajenación. Godreau & Giusti, *supra*, pág. 563. Son precisamente los bienes patrimoniales los que completan el esquema tripartito dispuesto en nuestro ordenamiento. Según establece el Art. 257 del Código Civil, 31 LPRA sec. 1026, los bienes de propiedad privada son aquellos que "además de los patrimoniales del pueblo de los Estados Unidos, del pueblo de Puerto Rico y de los municipios, [pertenecen] a particulares individual o colectivamente". En consecuencia, éstos están regidos por el Derecho privado vigente y son susceptibles del tráfico jurídico (*res in commercio*). De esta forma, pueden ser enajenados, prescriben y pueden estar sujetos a cargas y gravámenes. Vélez Torres, op. cit., págs. 42-43.[44]

---

[44]Nótese que hay una distinción entre los bienes de dominio público, los cuales están destinados al servicio de todos, y los bienes de dominio privado del Estado. Estos últimos pueden enajenarse con arreglo a la ley, son prescriptibles y pueden gravarse. Vélez Torres, op. cit., pág. 43. Sobre el particular, Colin y Capitant, expresan que los bienes de dominio privado del Estado son aquellos que éste posee y administra como un particular. Por consiguiente, en la medida que estos bienes le producen ingresos y pueden ser enajenados por el Estado, no se diferencian de las cosas de propiedad privada y les son aplicables las disposiciones del Código Civil. A. Colin & H. Capitant, Curso Elemental de Derecho Civil, Madrid, Instituto Editorial Reus, 1961, T.II, V.II, pág. 80.

Cónsono con esta distinción, en Gobierno de la Capital v. Consejo Ejecutivo de P.R., 63 DPR 434, 458-459 (1944), expresamos que los bienes de uso público del Estado son aquellos que pueden ser utilizados libremente por el público en general, en contraposición con los bienes patrimoniales del Estado a los cuales el público no

B.

Como hemos visto, en lo pertinente a la pregunta certificada, la clasificación de bienes que suscribe nuestro ordenamiento gira en torno a la susceptibilidad de apropiación que tiene un bien. Los bienes comunes no son susceptibles de apropiación por virtud de su naturaleza, mientras que los bienes de dominio público no pueden ser de apropiación particular por virtud de la ley. San Gerónimo Caribe Project v. E.L.A. I, 174 DPR 518, 558 (2008). Precisamente, esta distinción se sustenta con el Art. 274 del Código Civil, 31 LPRA sec. 1082, el cual establece lo siguiente:

> Entre las cosas que no son susceptibles de apropiación están comprendidas aquellas que no pueden ser propiedad particular por razón de su objeto, tales como las cosas en común o sean aquéllas cuyo uso y disfrute pertenece a todos los hombres.
>
> Hay otras cosas, por el contrario, que aunque por su naturaleza son susceptibles de propiedad particular, pierden esta cualidad como consecuencia de la aplicación que de ellas se hace para fines públicos incompatibles con la propiedad privada, si bien pueden adquirir su primitiva condición tan pronto cese el fin público que se las hubiera dado; tales son los terrenos de las carreteras, calles y plazas públicas.[45]

tiene constante y general acceso. *Véase, además,* E.L.A. v. Tribunal Superior, 97 DPR 644, 669 (1969).

[45]Este artículo fue adoptado del anterior Art. 482 del Código Civil de Louisiana de 1870. No obstante, es pertinente mencionar que anteriormente, desde 1890 hasta 1902, en nuestro ordenamiento aplicaba el Art. 341 del Código Civil español, en el cual se establecía que "los bienes de dominio público, cuando dejen de estar destinados al uso general o a las necesidades de la defensa del territorio, pasan a formar parte de los bienes de propiedad del Estado". San Gerónimo Caribe Project v.

Este artículo es diáfano en establecer una bifurcación entre los bienes patrimoniales y los de dominio público. Esto, en la medida que permite la mutación dominical mediante actos de afectación y desafectación. San Gerónimo Caribe Project v. E.L.A. I, *supra*, pág. 564.

La afectación tiene lugar cuando un bien queda destinado a un fin público y adquiere la clasificación de dominio público. "El acto de afectación se deduce de una declaración del legislador (Código Civil, Ley de Puertos, etc.) o mediante los actos administrativos realizados por el Estado bajo la autorización de alguna ley (como por ejemplo, la construcción de una plaza o un cementerio)". *Íd.* pág. 565. Hay circunstancias en las que no se necesita un acto ulterior del soberano debido a que el bien ya

_____

ELA I, *supra,* pág. 558 n.34. Como sabemos, en el Código Civil de 1902 no se incluyó esta disposición, sino que se trajo el derecho anglosajón.

En cuanto a esto, el tratadista Vélez Torres nos señala que:

> Al incorporar literalmente a nuestro Derecho civil el contenido del artículo 428 [sic] del Código Civil de Louisiana, se trajo a nuestro ordenamiento la regla del Derecho anglo-sajón al efecto de que cuando bienes susceptibles de apropiación se sustraen al tráfico jurídico por razón de haberse destinado al uso o dominio público, dejan de ser propiedad particular por 'incompatibilidad de uso', pero si el uso público termina, readquieren su condición primitiva de condición privada, no importa que su dueño original fuera el propio Estado o una persona particular. Vélez Torres, op. cit., pág. 41.

Es decir, con esta incorporación no se requirió que una vez un bien deja de estar destinado para un uso público debe retornar al patrimonio del Estado, sino que puede advenir parte del patrimonio de un particular.

posee determinadas características físicas o naturales que por virtud de una ley particular lo afectan, y en otras ocasiones, sí se requiere el acto del soberano para construir o destinar un bien para fines públicos. *Íd.*

Por su parte, la desafectación tiene lugar cuando por virtud de ley, un acto administrativo o por cambios en la naturaleza del bien que lo excluyen de su clasificación, sobreviene una mutación dominical. San Gerónimo Caribe Project v. E.L.A. I, *supra,* pág. 566. En la doctrina española, Lacruz Berjedo ha expresado que "[l]a desafectación cambia la condición del bien, [debido a] que [éste] deja de ser público y entra de nuevo en el tráfico. [Sin embargo, esto] no implica, necesariamente, cambio de titularidad, pues el bien en cuestión puede seguir perteneciendo al patrimonio del ente público". J.L. Lacruz Berjedo, F.A. Sancho Rebullida & et al., Elementos de Derecho Civil, Madrid, Dykinson, 2005, T.I, V.III, pág. 41.

Nuestros pronunciamientos jurisprudenciales dictan que este acto de desafectación puede ocurrir tanto expresa como tácitamente. San Gerónimo Caribe Project v. E.L.A. I, *supra,* pág. 566. Sin embargo, para que sea válido, es necesario que el gestor tenga competencia para ello. Más importante aún, reiteramos que lo primordial es que cese el fin público para el cual se había destinado el bien.

En el caso de los bienes de dominio público por "razón de su naturaleza" la desafectación tiene cabida

cuando acaecen cambios topográficos, ya estos hayan sido introducidos artificialmente u ocurridos naturalmente, que justifican sean excluidos de la clasificación de bien de dominio público. Claro está, además de estas modificaciones, siempre tiene que llevarse a cabo el proceso administrativo correspondiente. *Íd.* pág. 567.[46] En cuanto al proceso descrito en el Art. 274 del Código Civil, *supra*, la desafectación requiere un acto del soberano o un cambio en la condición natural del bien que lo excluya de la clasificación otorgada por la misma ley.

## III

### A.

Ante el descrito esquema tripartito de bienes característico de nuestro ordenamiento, corresponde delimitar la clasificación del objeto de esta controversia, es decir, las calles.

Como hemos visto, de acuerdo al Código Civil, nuestro ordenamiento clasifica las calles como **bienes de dominio público**. Es decir, son bienes que están destinados al uso del público en general. Cabe destacar que así ha sido reconocido por nuestra jurisprudencia desde 1909. En Saldaña v. Concejo Municipal de San Juan, 15 DPR 37, 51

---

[46]En San Gerónimo Caribe Project v. E.L.A. I, *supra*, determinamos que los terrenos sumergidos al mar son bienes de dominio público por razón de su naturaleza. No obstante, la legislación vigente al momento en que se realizaron los rellenos de una de las parcelas en controversia, contemplaba que por medio de la accesión u obras de desecación y relleno, los terrenos ganados al mar podían desafectarse. Esto no tan solo requería la degradación de los terrenos, sino que también se llevara a cabo el acto administrativo correspondiente.

(1909), expresamos que "desde el Gobernador, en su palacio, hasta el limosnero en su choza, tienen derecho al uso libre y continuado de las mismas", refiriéndonos a las calles, aceras y plazas de la ciudad de San Juan. Posteriormente, en Gobierno de la Capital v. Consejo Ejecutivo de P.R., 63 DPR 434 (1944), expresamos que los bienes de uso público del Estado son aquellos que pueden ser utilizados libremente por el público en general, tales como las plazas y **las calles**. *Véase, además,* Caquías v. Asoc. Res. Mansiones Río Piedras, 134 DPR 181 (1993); Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 DPR 1 (1997).

Ahora bien, debemos señalar que el hecho de que sean bienes destinados al uso público no necesariamente implica que éstas tengan que ser propiedad del Estado.[47] Al respecto, el tratadista Vélez Torres ha planteado que:

> El dominio público en nuestra patria conlleva siempre la idea de destino o afectación; afectación del público en general. Sin embargo, no se requiere que el bien afectado al uso público en general sea propiedad del Estado o de algunas de sus dependencias, corporaciones públicas o municipios. Vélez Torres, op cit., págs. 40-41.

En otras palabras, una persona particular puede mantener el dominio de la calle como un bien afectado, mientras que el Estado sólo retiene la función de guarda,

---

[47]Es importante destacar que en el caso de aquellas calles que son costeadas con fondos públicos, le aplican las disposiciones constitucionales que regulan el uso de las propiedades y los fondos públicos. Es decir, conforme al Art. VI, Sec. 9 de nuestra Constitución, solamente podrán ser utilizadas para fines públicos. *Véase* Art. VI, Sec. 9, Const. E.L.A., LPRA, Tomo 1, ed. 2008, pág. 429.

gestión y administración, no así su dominio. Vélez Torres,

op. cit., pág. 41.[48] Esto, debido a que, como ya hemos

mencionado, lo determinante para esta clasificación

estriba en el fin público para el cual ha sido destinado

el bien.

B.

Ahora bien, al igual que los bienes privados, los

bienes de dominio público están sujetos a la

reglamentación adecuada del Estado que no sea arbitraria o

irrazonable. Pacheco Fraticelli v. Cintrón Antonsanti, 122

DPR 229 (1988).

Cónsono con lo anterior, y a modo de ejemplo, se ha

permitido la reglamentación de estos bienes por parte del

estado desde múltiples perspectivas, entre las cuales se

encuentra la libertad de expresión. Esto, debido a que

para tales propósitos, las calles, al igual que los

parques y las plazas públicas, son consideradas foros

públicos tradicionales. En tal caso, este Tribunal ha

expuesto que:

> Desde tiempos inmemoriales los parques, las
> plazas y las calles en Puerto Rico han
> constituido foros de divulgación, de intercambio
> y de crítica de ideas. Es en ellos en donde la
> conciencia ciudadana y particular forma de ver

---

[48] Es pertinente mencionar que a pesar de esto, citando a Puig Peña y a Planiol, Vélez Torres nos indica que la doctrina se ha ido dirigiendo a reconocer que el Estado ostenta un cierto derecho de propiedad sobre los bienes de dominio público que excede la mera guarda y vigilancia. Esto, debido a que por ejemplo, el Estado puede ejercitar acciones reivindicatorias o posesorias sobre estos bienes, además de que puede otorgar concesiones de uso y disfrute temporales sobre estos bienes. Vélez Torres, op cit., págs. 42-43 n.19.

el mundo tienen impacto y repercuten. Son los foros públicos por excelencia para la divulgación y expresión de ideas. Las calles en particular constituyen un instrumento eficaz de divulgación de ideas accesible para aquellos individuos y grupos que no cuentan con suficientes recursos económicos y que no tienen, por tanto, acceso a los medios de comunicación masiva como lo son la radio, la televisión y la prensa. <u>Pacheco Fraticelli v. Cintrón Antonsanti</u>, *supra,* págs. 241-242.

En consecuencia, a pesar que las calles son bienes de dominio público, se ha permitido reglamentar su uso siempre y cuando se empleen las guías y las normas adecuadas.

En lo que atañe a la controversia ante nos, a tenor con la mencionada Ley Núm. 21, la Asamblea Legislativa ha regulado el uso de las calles como bienes de dominio público al organizar el acceso a las vías públicas en las urbanizaciones y comunidades residenciales públicas y privadas. Al respecto, hemos expresado que "[e]l concepto de control de acceso implica que se preserva la *naturaleza pública de las calles residenciales,* mientras se permite a los residentes establecer unos medios para controlar el tráfico de vehículos y el uso público, y así velar por su propia seguridad, y cultivar un ambiente propicio para una mejor convivencia". <u>Caquías v. Asoc. Res. Mansiones Río Piedras</u>, *supra*, pág. 186 (1993).[49] Por lo tanto,

---

[49]Sobre este particular, en su libro sobre Derecho de urbanizaciones, la Dra. Margarita E. García Cardenas destaca cómo la aprobación de la Ley Núm. 21 trajo consigo la idea de que mediante este estatuto se estaba trastocando el carácter público de las calles residenciales. Sin embargo, como bien indica la profesora, **esto es totalmente erróneo** y así ha sido confirmado

"[ú]nicamente [se] reglamenta el uso de unos bienes a los cuales todos los habitantes tienen derecho de uso, en aras de salvaguardar precisamente el sosiego, la paz y la tranquilidad de la vida comunitaria, factores que anteriormente hemos reconocido que son parte del derecho a la dignidad e intimidad del ser humano, derechos de posición preferente en nuestro esquema constitucional". Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, *supra*, pág. 33 (citando a Pueblo v. Hernández Colón, 118 DPR 891, 905 (1987); E.L.A. v. Hermandad de Empleados, 104 DPR 436, 446 (1975); Sucn. de Victoria v. Iglesia Pentecostal, 102 DPR 20 (1974)).

Consecuentemente, la referida ley permite y delega a las asociaciones de residentes que controlen el acceso a las calles residenciales de su urbanización, **mientras que simultáneamente se preserva la naturaleza pública de estos bienes.** Según expresado en la Exposición de Motivos de la mencionada ley, esta regulación se permitió para combatir la alta incidencia de criminalidad en nuestra Isla. *Véanse* Exposición de Motivos de la Ley Núm. 21; Nieves v. AM Contractors, 166 DPR 399, 411 (2005).

Por consiguiente, se facultó a los municipios para que pusieran en vigor la legislación de acuerdo a las propias disposiciones de la ley y el Reglamento de Planificación Núm. 20, adoptado por la Junta de

_____

jurisprudencialmente por este Tribunal. M.E. García Cardenas, Derecho de urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales, San Juan, Editorial InterJuris, 2010, pág.80.

Planificación el 20 de enero de 1989. Mientras que en el caso de las asociaciones, se les delegó administrar y mantener los sistemas para controlar el tráfico y las vías públicas de acuerdo al permiso que tuviera a bien otorgar el municipio luego de que se hubiese cumplimentado la reglamentación aplicable. Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, *supra*, pág. 26.

En fin, como hemos descrito, tanto las urbanizaciones públicas como privadas están obligadas por la Ley Núm. 21 y deben solicitarle permiso al municipio para poder controlar las vías públicas que otorgan el acceso a sus urbanizaciones. Sin embargo, al así hacerlo, no alteran el carácter público que en nuestro ordenamiento se le ha otorgado a las calles.

IV

Ante todo el marco jurídico expuesto, es imperativo concluir que en nuestro ordenamiento las calles son bienes de dominio público que han sido destinadas para el uso público. Es decir, más allá de la razón práctica para la cual son utilizadas, responden a un fin social significativo dentro de nuestra sociedad. En palabras del tratadista Vélez Torres, "[e]l bien de dominio público sirve un fin social deseable en la medida que es disfrutado por el público en forma directa. La ciudadanía usa las playas, los parques, las carreteras, las calles, etc., sin tener que pedir permiso a nadie". Vélez Torres, op. cit., pág. 42.

Por lo tanto, como desde su origen las calles están afectadas por ley y pertenecen al dominio público, son bienes inalienables, inembargables e imprescriptibles. No obstante, y como hemos establecido, este uso público no es irrestricto y puede ser reglamentado.

Asimismo, su destino tampoco es inmutable. La afectación de este bien puede cesar y las calles advenir en bienes privativos, ya sean del Estado o de particulares de manera individual o colectiva. Consecuentemente, mediante el proceso de desafectación, las calles pueden dejar atrás el carácter público que las caracterizaba y convertirse en bienes privativos. Sin embargo, para esto se requiere un acto legislativo o administrativo expreso por parte de un gestor con competencia para ello. Es decir, es necesario que se lleve a cabo ese acto dispositivo mediante el cual se reconozca el cese de la utilidad pública de las calles. Ello, porque como expusimos, lo más importante es que cese el fin público para el cual fue destinado el bien. Claro está, ese acto de desafectación requiere un ejercicio responsable, en el cual el Estado no abdique su deber ministerial de planificar, preservar la finalidad social de la ordenación territorial y velar por un adecuado desarrollo urbanístico.[50]

---

[50]A partir de la normativa esbozada es que en nuestro ordenamiento se concibe la existencia de calles residenciales que han perdido su utilidad pública y se han convertido en privativas. Específicamente, en el contexto de planificación y desarrollo urbanístico, se concibió la

V

Por los fundamentos expuestos, discrepo de la contestación esbozada por una Mayoría de este Tribunal. Correspondía reafirmar la naturaleza pública de las calles como bienes de dominio público.


Luis F. Estrella Martínez
Juez Asociado

---

Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.,* conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, la cual requirió que se adoptara un reglamento conjunto de permisos. A tenor con este mandato, la Junta de Planificación adoptó el Reglamento Conjunto de Permisos para Obras de Construcción y Uso de Terrenos, Reglamento Núm. 7951 de 30 de noviembre de 2010, enmendado en el 2011 y 2012 (Reglamento Conjunto). En su versión original, la sección 17.3.2 del referido reglamento solamente contemplaba el acceso a las urbanizaciones mediante vías públicas debidamente inscritas. Sin embargo, con las enmiendas del 2011 esto fue modificado y se reconoció que las urbanizaciones podían tener acceso mediante vías privadas debidamente dedicadas para tales fines. Nótese que estas enmiendas son de reciente aprobación, por lo que esto no estaba contemplado en nuestro ordenamiento cuando se desarrollaron las urbanizaciones sobre las que el Tribunal de Distrito le ordenó a los municipios presentar el plan de acción para garantizar el acceso a los Testigos de Jehová. No obstante, aún bajo ese escenario, es necesario que, de acuerdo a los parámetros que hemos expuesto, haya un acto de desafectación para lo cual la utilidad pública de las calles tendría que haber cesado.